CHACE administrator of Stranahan, *vs.* HINMAN.

Where a party has an *indemnity* not only against *actual damage* or expense, but also against *any liability* for damages or expenses, he need not wait to commence his suit until he has actually paid such damages; his right of action is complete when he becomes *legally liable* for them.

Accordingly, where a bond was given to indemnify the obligee, his heirs, &c. against all damages, costs and charges, to which he and they might be subjected or *become liable for*, by reason of the reversal of a certain judgment in favor of a defendant, who had been sued on a promissory note · to which the obligee was a party; and also to indemnify him against the note, and any judgment or proceeding which might be had against him as endorser thereof; and the judgment was reversed, and an action brought against the *administrator* of the obligee, charging the intestate as endorser, in which suit the administrator gave a *cognovit*, and pleaded *plene administravit*, which plea was confessed, and judgment taken for assets *quando acciderint*, IT WAS HELD, notwithstanding the plea of *plene administravit*, and although there was no evidence that assets had, since the plea put in, come to the hands of the administrator, or probably ever would come to his hands that he was entitled to recover the amount of the judgment obtained against him.

And *it was further held*, that the defendant was not entitled to notice of the pendency of the suit against the administrator, and that the latter was not bound, under the circumstances of the case, to interpose a defence founded upon the illegality or usurious character of the original transaction.

THIS was an action of debt tried at the Otsego circuit in September, 1829, before the Hon. SAMUEL NELSON, then one of the circuit judges.

The suit was brought on a bond given by the defendant to Stranahan, the intestate, bearing date 17th June, 1825, conditioned that the obligor should save harmless, and indemnify the obligee, his heirs, executors and administrators, *against all damages, costs and charges* to which he and they might in any way be subjected or *become liable for*, by reason of the reversal by the court for the correction of errors of this state of a judgment for the defendant, rendered in the supreme court

in a suit brought by the Utica Insurance Company against Henry Scott, junior, on a promissory note drawn by James McNamee, and endorsed by Stranahan and by Scott to the Utica Insurance Company; and further conditioned, to indemnify the obligee from all charges and expenses which he might incur or become liable for in defending the writ of error brought on such judgment, and to indemnify him *against the note, and any judgment or proceeding which might be had against him* as endorser thereof. The judgment for the defendant in the cause of the Utica Insurance Company against Scott was *reversed* in the court for the correction of errors on the 8th January, 1827, judgment rendered for the plaintiff, costs adjudged to them, and the record directed to be remitted to the supreme court. Subsequently, in the same year, Scott paid to the Utica Insurance Company $900 in full of their claims against him as endorser of the note of McNamee, and also paid to them $219,01, the costs adjudged against him in the two courts, and commenced a suit against Chace as administrator of Stranahan, charging Stranahan as *first endorser* of the note made by McNamee. Chace gave a *cognovit* for $1372, and pleaded *plene administravit*, which plea Scott admitted to be true, and took judgment for assets *quando acciderint*, which was accordingly entered for the amount confessed, and $25,95 costs, on the 19th November, 1828. On these facts the plaintiff rested, and the defendant moved for a *nonsuit*, on the ground that it appearing by the record of the recovery against Chace as administrator of Stranahan, that he had *fully administered* upon the estate of the intestate, and it not being shown that any goods, &c. had since come to his hands to be administered, or probably would come, it was manifest that neither Stranahan or his administrator had been damnified, and it was insisted that the plea of *non damnificatus*, which had been interposed by the defendant in this cause, was a perfect defence, which motion was overruled by the judge. The defendant-further insisted that if the plaintiff was entitled to recover, he could recover *nominal damages* only; but here again he was overruled. A variety of evidence was then adduced, as well on the part of the defendant as of the plaintiff, as to the origin of the debt from McNamee to the Utica Insurance Company; as to

negotiations between the defendant, who was a director and stockholder of the company, and Stranahan, in respect to the reversal of the judgment rendered in favor of Scott, had previous to such reversal, and as to indemnity received by Stranahan from McNamee; but the decision of the court not being based upon either of these particulars, it is not deemed necessary more particularly to advert to those facts. This suit, it was admitted, was prosecuted for the benefit of Scott. A verdict was entered for the plaintiff, subject to the opinion of the supreme court, as to the right of the plaintiff to recover, and the amount of such recovery.

*E. B. Morehouse,* for the plaintiff. It was not necessary for the plaintiff to shew that he had been damnified by the *actual payment* of the judgment against him; it was enough that he had *become liable* to pay, and the judgment was sufficient evidence of damage, 1 Saund. 116, n. 2; 1 Bos. & Pul. 638; and *Rockefeller* v. *Donnelly,* 8 Cowen, 623. Notice to the defendant of the suit of Scott against the plaintiff, Chace, was not necessary. 1 Saund. 116, n. 2. Cro. Eliz. 97. 3 T. R. 374.

*J. A. Spencer,* for the defendant. The bond upon which the suit is brought is strictly a *bond of indemnity,* and until payment, an action did not lie. 1 Chitty's Pl. 481. 1 Bos. & Pul. 640, n. a. 2 Chitty's Pl. 512, n. c. and d. 14 Johns. R. 177. The case last cited is much stronger than the present, and there it was holden that the action would not lie. The plea of *non damnificatus* was a perfect defence. Where the bond is simply to indemnify, notice is indispensable; but where there is a duty beyond mere indemnity, notice is not necessary. Thus a sheriff may recover on a bond for the jail limits, because the obligors engage not only to indemnify, but that the defendant shall remain a true and faithful prisoner. 6 Johns. R. 158. 1 id. 517. 4 Mass. R. 349. 4 Dallas, 436, n. 1. Had the defendant in this cause had notice of the suit against the present plaintiff, he might have shewn that the note was void for usury, 2 Cowen, 712, 1 Wendell, 555; that it was discounted in violation of the restraining act, 2 R. L. 234, 15

Johns. R. 358, 8 Cowen, 709, and that a recovery was barred by the statute of limitations.

*A. Van Vechten,* in reply. The bond was executed to indemnify Stranahan against the consequences of a reversal of the judgment; he being the first endorser, was the party to be affected by the reversal, being responsible to Scott, the second endorser. Scott has a judgment for assets *quando acciderint;* let judgment be given upon this verdict and there will be assets. The indemnity was as much for the benefit of Scott as of Stranahan ; for if the latter was discharged, the former could not be held responsible. A contestation as to the right of the Utica Insurance Company to enforce payment upon the note in question, after the reversal of the judgment of the supreme court, was not contemplated nor desired by the defendant in this cause; the object of the reversal was to hush up all such defences as had been made; he could not therefore complain of want of notice, and at all events, was not entitled to t . 4 Johns. C. R. 329.

*By the Court,* SUTHERLAND, J. It is contended by the defendant that this is a bond of indemnity merely, and that neither the plaintiff nor his intestate have been injured or damnified by the reversal of the judgment in the court of errors; or that the damage, if any, is merely nominal, as nothing has been paid or probably ever will be paid upon the judgment recovered against him by Scott.

The inquiry naturally suggests itself, what was the motive of the defendant Hinman in entering into this arrangement with Stranahan? We find the answer in the testimony of Henry Green. He states that he was, at the time of the giving of the bond in question, secretary of the Utica Insurance Company; that he drew the bond and witnessed its execution; and that the defendant Hinman was at that time one of the directors of the company, and a stockholder to a considerable amount. He also appears to have taken an active part in the prosecution of the writ of error. There can be little question that he was the managing agent of the company in all these transactions, and that although he signed the bond

individually, he was understood by Stranahan, and was in fact acting on behalf of the company and with their approbation, though probably without any legal authority to bind them. It is obvious, from all the facts in the case, than Stranahan had no objection to the judgment being reversed; that only a formal resistance was to be made to it, for the purpose of saving appearances. The letter of Hinman to Stranahan of the 22d of December, 1825, shows that Hinman was to pay all the expenses of defending the writ of error. The truth undoubtedly is, that it was perfectly understood between Hinman and Stranahan, that neither Stranahan nor Scott were to be affected by the reversal of the judgment; and I think such is the conclusion to be drawn from the face of the bond itself, without any extraneous evidence. Stranahan was the first endorser, and was liable over to Scott upon the note, in the event of his being compelled to pay it. The indemnification of Stranahan as endorser upon the note, manifests therefore *by the strongest* implication, the understanding of the parties that if the judgment was reversed, the note was not to be collected from Scott, the subsequent endorser, who would in that event have a right immediately to collect it from Stranahan, and produce the very state of things against which it was the object of the bond to indemnify him. This view of the case is intended to shew that there is no injustice in giving to Scott (for whose benefit this suit appears to be prosecuted) the indemnity provided by this bond, if it can be done consistently with the rules of law.

There is no doubt as to the general proposition, that in order to recover upon a *mere* bond of indemnity, actual damage must be shewn. If the indemnity be against the payment of money, the plaintiff must in general prove actual payment, or that which the law considers equivalent to actual payment. A mere legal liability to pay is not in such case sufficient; but if the indemnity be not only against *actual damage* or expense, but also against *any liability* for damages or expenses, then the party need not wait until he has actually paid such damages, but his right of action is complete when he becomes legally liable for them. Chancellor Jones, in the case of *Rockefeller* v. *Donnelly*, 8 Cowen, 639, lays it down as a general prop-

ALBANY,
Jan. 1832.

Chase
v.
Hinman.

osition, that even when the obligation is simply to indemnify against damage or expense, and the obligee has become absolutely bound and liable to pay the expense or damage, and the amount is liquidated so that his demand against his obligor upon the bond of indemnity, by reason of the charge against himself is reduced to a certainty, he may enforce his demand against his obligor in the first instance, before he satisfies the charge against himself; and he observes that it is an operation which avoids circuity, and essentially subserves the purposes of justice and equity, by enabling him who is entitled to the indemnity, to obtain the means to satisfy the charge he has incurred from the party who ought to bear it, and thereby save himself the necessity of an advance and payment out of his own funds and estate, which might be inconvenient, and perhaps involve him in serious embarrassment. I must confess that this general proposition of the learned chancellor seems to me to carry the doctrine farther than I had supposed warranted by the authorities, 7 Johns. R. 358 ; 4 Mass. R. 627 ; 14 Johns. R. 177 ; but it is unquestionably sound, where the indemnity is not only against *actual damages* and expenses, but also against the *liability for them ;* and such, I apprehend, will be found to be the fact in this case, upon a critical examination of the defendant's bond. The condition is, 1. That the defendant shall save harmless and indemnify Stranahan against all damages, costs and charges to which he may *in any way be subjected* or *become liable for* by reason of the reversal of said judgment; 2. Against all charges and expenses which he *may incur* or *become liable for* in defending said writ of error; and 3. Against said note, or any judgment or proceeding which may be had against him as endorser thereon. A distinction is here obviously taken between *damages actually sustained or incurred* and a *fixed legal liability* for such damages, and the indemnity is against both. In the case of *Rockfeller* v. *Donnelly,* already referred to, 8 Cowen, 628, the condition of the bond was to save, defend and keep harmless the overseers of the poor, &c. from and against all charges, damages and expenses, taxes, rates and assessments, &c. for or by reason of the birth, &c. of a bastard child, &c. Chancellor

Jones remarks upon the subject, that the indemnity consists in securing the town against charges and expenses, taxes, rates, &c. and that this could only be effectually done by keeping the infant when born from becoming chargeable, or by providing the means to defray the charges in which its birth and maintenance should involve the town. If the child upon its birth is permitted by the father to become a charge to the town, expenses inevitably follow, for which the overseers are answerable. Mr. Senator *Spencer*, p. 653, says the defendants are to indemnify against all *charges, expenses,* &c. by reason of the birth or maintenance of the child. Technically this condition was broken the moment the child was born; for then it became a charge on the town, and that was the thing against which the defendants covenanted; and the birth being admitted by the pleadings, it is a legal consequence that the child became a charge to the town, and thus the breach is admitted. The chancellor and Mr. Spencer both treat it as a common bond of indemnity between individuals, and in the observations which I have quoted, are settling its construction without any reference to the circumstance that the bond was given to public officers. If then a bond of indemnity against charges, damages, expenses, taxes, &c. is broken by the happening of an event which must inevitably lead to charges, expenses or taxes, much more must it be so when the indemnity is in terms against a *liability* for damages and expenses.

That the judgment recovered by Scott against Stranahan's administrator, which fixed his liability for damages and ascertained the amount, was a consequence of, or happened, in the language of the bond, by reason of the reversal in the court of errors of the judgment of *Scott* v. *The Utica Insurance Company*, there can be no doubt; and a breach assigned upon that part of the bond, would be supported by this evidence. I make this observation because the pleadings are not attached to the case, and it does not appear what the particular breaches assigned are, nor the manner of the assignment.

It was not competent for Hinman, under the circumstances of this case, to show that Scott had a good defence against the suit of the Utica Insurance Company, or that Stranahan's administrator might have successfully defended the suit

brought by Scott against him upon the note in question; nor was he entitled to notice of the pendency of that suit from the plaintiff. It is evident that the defence of the writ of error was amicably and jointly conducted by Stranahan and Hinman, at the exclusive expense of the latter, or of the insurance company, whose agent Hinman undoubtedly was, and that it was the understanding and the wish of both of them that the judgment should be reversed. Hinman treated Stranahan throughout as the party in interest in the writ of error. Stranahan *so considered* himself, and well he might, for he was not only the first endorser, and liable *over* to Scott in that character, but he had also, as early as 1819, bound himself in a penal bond to Scott to pay him whatever sum the insurance company might recover against him as second endorser upon the note, with costs, &c. Admitting Stranahan to have been solvent at that time, he was in truth the only party in interest, Scott was a mere nominal party, and to say the least of it, it would have been a violation of good faith on the part of Stranahan or his administrators, to have interposed a defence to the suit of Scott, on the ground of the illegality or usurious character of the original transaction; and if Hinman is to be considered the agent of the insurance company, the complaint that such defence was not interposed, does not come with a very good grace from him. His attempt to shew that Stranahan had been *indemnified* by the maker of the note, entirely failed.

The plaintiff is entitled to judgment.