Mr. Chief Justice Johnson delivered the opinion of the Court. The great and indeed the controlling question involved in this cause relates to the precise period of time at which the cause of action accrued, as upon this point hangs the fate of the defence of the statute bar. The decision of this question-will necessarily turn upon the construction which shall be placed upon the obligation executed by Royster and his sureties to Martin. The same instrument was before this court in the case of Martin v. Royster ct al., reported in 3d Eng., at page 79 et seq., and its legal character was there settled. If the legal operation of the instrument, as settled in that case, be the true and legitimate one, it is conclusive upon the question here, and there is no longer any room for controversy in relation to it. We will therefore proceed to examine the doctrine of that case upon that subject, and see whether it is sustained by the authorities. It is contended that, in contemplation of law, the instrument declared upon is nothing more nor less than a pure and simple bond of indemnity against damage, and that consequently nothing short of actual damage incurred by the payment of money or its equivalent, can authorize a recovery against Royster or his sureties. It is conceded by the counsel for the defendant that if the cause of action accrued to Martin when Royster, as deputy, failed to pay over the money to Reider, and when Martin as sheriff became legally liable for the same, the present action is barred, and that the plaintiff should have the benefit of the statute. This court, in the case already referred to, where the same instrument was under examination, said, “The ground assumed by Ashley, one of the defendants, is, that the bond executed by Royster to Martin, is merely a bond of indemnity, and that in order to entitle him to a recovery against Royster or his securities, he is bound to show that he has sustained actual damage. The condition of the bond' is that Royster, the defendant, will well and truly do and perform all the duties appertaining to the office of sheriff of Pulaski county, during the time he should continue the lawful deputy of Martin. In looking through the cases cited at the bar, we have not been able to find any one where the condition was precisely the same as the that contained in the instrument upon which this suit is founded. In the case of Hughes v. Smith & Miller, reported in 5th Johnson, p. 167, the bond was conditioned that the under sheriff should execute the office during his continuance therein, according to law, and without fraud or oppression, so that the sheriff should not be made liable for the payment of any damages or money in consequence of any act or thing, which the under sheriff should do by virtue of the office. In that case, the court held that a breach in general terms averring that Smith had collected moneys as under sheriff to the amount of f1,000, which he had refused to account for and pay, was sufficient, and that it was admitted in order to avoid a cumbersome prolixity upon the record. The same rule was acknowledged and applied by that court in the case of The Post Master General v. Lackran, 2 John. R. 413, and a reference was there made to the English authorities, of which Thurm v. Farrington, and Barton v. Welb, (1 Bos. & Pul. 646, 8 Term Rep. 493,) are the latest and most pointed on the subject. The language used in the instrument now under discussion, though not so specific, yet, in its legal import, it clearly covers as much ground as that in the case referred to. Royster covenants to do and perform all the duties appertaining to the office of sheriff. It will certainly be conceded that no one of the duties of the sheriff is more plain and positive than that which requires him to .pay over money to the party entitled to it, when collected under an execution. There can be no doubt but that, if the facts charged in the declaration are true, and that they are, stands admitted by the demurrer, the condition is broken and the plaintiff’s cause of action is complete.” The Supreme Court of the State of New York, in the matter of Negus, (7 Wend. 502,) said, “The first objection urged against the decision of the trustees is, that the bond executed by Negus to Sinnott is simply a bond of indemnity, and that therefore Sin-nott must show that he has been damnified by payment of the debts which Negus assumed to pay, or that he has been damni-fied in some other way. From the whole transaction taken together, it is plain that the bond was intended as a bond of indemnity. HadNegus completed the job, andpaidthe debts which Sinnott was liable to pay, Sinnott would have had no further claims upon him or the job: the object of taking the bond was therefore to indemnify Sinnott; but it does not therefore follow that no action lies until actual damages have accrued. Whether an action lies or not, depends upon the true intent and meaning of the covenant; if it is simply to indemnify and nothing more, then damages must be shown before the plaintiff can recover; but if there is an affirmative covenant to do a certain act, or to pay certain sums of money, then it is no defence in such an action to say that the plaintiff has not been damnified. In such case, it is the duty of the defendant to perform his own contract; if he does not, an action lies for the breach, and the measure of damage is the amount of the sums agreed to be paid, or the injury sustained by the plaintiff, arising either from liability incurred, or advantages which would have accrued from the performance of the acts which the defendant had covenanted to perform.” The same court, in the case of Chace v. Hinman, (8 Wend. 456,) said, “There is no doubt as to the general proposition that in order to recover upon a mere bond of indemnity, actual damage must be shown. If the indemnity be against the payment of money, the plaintiff must, in general, prove actual payment; or that which the law considers equivalent to actual payment. A' mere legal liability to pay is not in such case sufficient; but if the indemnity be not only against actual damage or expense, but also against any liability for damages or expenses, then the party need not wait until he has actually paid such damages, but his right of action is complete, when he becomes legally liable for them.” In the matter of Negus, already referred to, the court further said that, “Where indemnity alone is expressed, it has always been held that damage must be sustained before a recovery can be had; but where there is a positive agreement to do the act which is to prevent damage to the plaintiff, there an action lies, if the defendant neglects or refuses to do such act; and’ where the covenant is both to do the act and to indemnify, we must resort to the intention of the parties. Whatever may be said of the case of Douglas v. Clark, it is sufficient that this is distinguishable: and it is difficult for me to conceive of a case where one assumes to do what was before the duty of another, where it is not the intention of the parties that the party, contracting to perform, shall perform, in the first instance according to his agreement. I presume to say that it never was the intention of the parties in such a case, that the party to be indemnified-is first to be damnified.” We have looked extensively and carefully into the authorities cited by the counsel of the defendant in error, and we think that it may be safely said that no one of them calls in question the doctrine of the cases above quoted. The distinction running through all the books to which we had access, and we have given the subject a thorough examination, is between conditions for , mere indemnity against actual loss or damage, and such as guard against the mere liability of damage. The true question is, what was the intention of the parties? Was it that Martin should first pay over to the plaintiffs in execution, such moneys, as Royster should collect, and then to seek a re-imbursement from Royster, or was it that Royster should pay the money himself, and thereby prevent even the liability of a suit against Mar-; tin? The latter would seem to be the most reasonable construction of the covenant. Royster did not merely engage to save Martin harmless against damages, but he positively and emphatically undertook to perform a certain act, the performance of which would not only have saved him harmless from actual damage, but it would have also .prevented the slightest liability from resting upon him. He engaged well and truly to do and perform all the duties appertaining to the office of sheriff of Pulaski county, during the time he should continue the lawful deputy of Martin. By reference to the statute by which the duties of the sheriff are prescribed and enumerated, it will be seen that among the first and most prominent is that which enjoins the payment of such moneys as shall be collected up on execution. When Royster covenanted to do and perform all the duties appertaining to the office of sheriff, he most unquestionably, in contemplation of law .and to all intents and purposes, engaged that he would pay over to the rightful owner, all such moneys as should .come into his hands by virtue of legal process, and according to the command of the writ. If this is a legitimate interpretation .of the undertaking, and that it is, we think no one will seriously dispute, we consider it perfectly clear that it is not a matter of consequence whether Martin has been damnified or not, provided he can show that Royster has failed to perform the act which he has stipulated to do. We are therefore satisfied that the c.onstrutction given to this covenant, in the case referred to in 3d English, is well sustained by the principles applicable to such contracts, and that consequently the cause of action which js now sought to be enforced, did not arise at the time of the actual payment of the money by Martin, but that, on the contrary, it accrued and became perfect the moment that Martin’s legal liability became fixed by Royster’s failure to pay it over according to the command of the writ. If Royster had engaged, in so many words, to pay over on the return day of the execution, and according to the command of the writ, all such moneys as he should collect from time to time by virtue of his office of deputy sheriff, it is presumed that, in the face of the authorities cited, no one would seriously insist that it was a covenant for mere indemnity against actual damage; and if so, we consider it equally clear that the bond in suit .cannot be so regarded, as its legal operation and effect are precisely Ibe same as it would have been in case the exact words of the statute touching that official duty had been adopted. We feel perfectly satisfied therefore, both upon principle and authority, that the undertaking of Royster was not merely to re-imburse Martin such damages as he might be compelled to .pay in consequence of his acts or omissions, whilst acting in the capacity of deputy, but that, on the contrary, it‘was to pay over all such moneys as he should collect, and thereby prevent even the possibility of loss or damage resulting to Martin. The instrument under consideration being a joint and several obligation, it is manifest that the right of action accrued against Royster and his sureties at the same time, and that consequently Badgett, as one of those sureties, stands upon the same ground as his principal in respect to the benefit of the statute bar. It appears from the testimony that the money was collected by Royster in 1838, upon excutions returnable to the April term of that year, and that the present suit was not instituted until April, 1849, showing a lapse of more than ten years. The plaintiff interposed in the court below his three several pleas of the statute of limitations, setting up in the first a lapse of two, in the second four, and in the third five years after the accrual of the cause of action, and before the institution of the suit. The court sustained a motion to strike out the first two and overruled it as to the third. The act of the court in thus sustaining the defendant’s motion to strike out the first two pleas as also the sixth, constitute one of the assignments of error. The correctness of this assignment we will now proceed to determine. We have made a strict examination of all the statutes as well of the territorial, as the State government, touching the limitation of actions, and we have not been able to find any one which can be construed to embrace the instrument before us until the 20th of March, 1839. Prior to the passage of this act, there was no statute in force as to limitations upon such instruments. The bond declared upon, though executed by a deputy sheriff to his principal for his indemnity and security, cannot be said to be in .any sense official in its character, but simply and purely private and an individual obligation. This being the case, it cannot fall within the description of any of the several official bonds enumerated in the statute, and it is equally clear that it cannot legitimately come within any of the specified contracts or liabilities therein set forth. The eleventh section of the act referred to is the one which applies to the cause of action in question, and that declares that “all actions not included in the foregoing provisions shall be commenced within five years after the cause of action shall have accrued.? This Court in the case of Baldwin v. Cross, 5 Ark. Rep. 512, when passing upon the legal effect and operation of this act, said, “the statute of limitations took effect on the 20th of March, 1839, and this suit was brought upon the 15th of June, 1843. Prior to the passage of this act, there was nb statute in force, in the territorial government, as to limitations upon foreign judgments. The operation of the act upon demands existing at the time of its passage is the same as it would be upon those accruing upon the day it took effect. All Ihe demands existing when the act went into operation, must be sued for within the time prescribed, or they will be barred.” The statute creates a new rule upon the subject, and the essence of a new rule is its application to future cases that may arise under it. In The People v. The Supervisors of the Columbia College, 10 Wend. 365, the court said, the statute of limitations like all other acts, are prospective, and so ought to be construed unless otherwise expressed, or that they cannot have the intended operation by any other than a retrospective construction. The general rule is, that no statute is to have aretrospective operationbeyondits commencement. Sayre v. Wisner, 8 Wend. 663. And in Dash v. Van Kleek, 7 J. R., it is held that no statute can be construed retrospectively when it takes away subsisting vested rights. It cannot cut off all remedy and deprive a party of his right of action. Our revised statutes apply to limitations of actions or causes of action accruing or existing subsequent to their taking effect. The.rule relates to future contracts, which would be barred according to its provisions, or to existing demands, as if they had accrued at the time tbe statute commenced its operation. The demurrer to the plea relates back to the declaration, and the record shows that five years have not elapsed since the passage of the act of limitations.” The instrument in suit falling within the same statute, of course the rule of construction there laid down is strictly applicable to it and, consequently, the 20th of March, 1839, is the day from which the statute commenced running, and a lapse of five years from that time will form a complete bar. In this view of the law, it is obvious that the first and second pleas tendered issues which were wholly immaterial, and that consequently they were defective as a defence to the action, yet they were not so utterly frivolous as to be struck out upon mere motion, but should have been met by demurrer. (See Crayry v. Ashley and Beebe, 4 Ark. R. 206, and 6 Eng. R. 480, Wayland et al. v. Coulter et aZ.) This court in the first case said, “the rule upon the subject we take to be this, that if the pleas are informal, but still go to the substance of the action, that the plaintiff will not be allowed to sign judgment, but must demur: and the reason given for the demurrer is that the defendant might obtain leave to amend, but if they are without color of truth to support them, or where they are intended as mere instruments of delay, they ought to be stricken out. (12 Wend. 196, 223; 10 ib. 624, 672,) and in the last, the following language was held, viz: “The plea interposed was very different from one that might set up one year as a bar to an action bound by the lapse of five, because in such a case, inasmuch as lapse of time properly presented, would have been a bar, that plea although defective, would have been of a nature appropriate to present a defence to the action, and would therefore be properly met by a demurrer. But inasmuch as our statute of limitations does not apply to proceedings like those in the case at bar, as was settled in the case we have cited, the plea settingup that bar was totally inappropriate, and therefore might have been as well met by motion as by demurrer.” The rule to be extracted from those cases is, that in order to render a plea a proper subject of a motion to stike out, it must not only fail to tender a material issue, but it must also be wholly unadapted to the nature of the action. Lapse of time, as has already been shown, might constitute a full and valid defence to this action if well pleaded, and consequently the first and second pleas, though defective in not settling up the requisite time, were still appropriate pleas, and consequntly could only be met by demurrer. The court below consequently erred in sustaining the motion to strike out the first and second pleas of the plaintiff in error. The only remaining question relates to the propriety of striking out the sixth plea. This is a general denial of the existence of the deputyship of Royster, at the time of the alleged default. It is contended that this plea was properly stricken out, as the same matter of defence had been previously set up in other pleas. This is not true in point of fact, as neither the fourth nor the fifth pleas deny the existence of the deputyship; but, on the contrary, they both expressy admit it, but seek to defeat the action by impeaching the consideration of the bond as being against the policy of the law. It did not lie in his mouth to deny the original appointment of deputy as recited in the bond. From this, he was most clearly estopped by his deed. (See Outlaw et al. v. Yell, Governor, &c., 3 Eng. 351, and Sullivan v. Pierce et al., 5 Eng. 502.) But he is not so estopped to deny its continuance down to the time of the failure of duty which is now charged upon him, and upon the truth or falsity of which his liability is- made to depend. According to the terms of the bond, Royster is only to be held responsible to Martin under it for the acts or omissions of the former whilst he acts under the authority of the deputyship conferred by the latter. It is therefore clear that, although Royster could not deny the original appointment in consequence of the legal estoppel, yet either he or his sureties could show that such authority had ceased before the commission of the act charged against him. That Royster acted during the continuance of his authority as deputy and by virtue of it, is of the very.essence of the charge, and as a matter of course to show that the falsity of such charge must be of the essence of the defence. This plea therefore sets up matter which is appropriate in its nature as a defence to the action, though it must be admitted the subject matter thus presented is defectively stated, and would have been held bad upon demurrer. He having admitted the original appointment, or which is tantamount to the same thing, being es-topped to deny it, he could not in general terms deny its continuance, but could only do so by setting up special matter by way of avoidance. This plea, therefore, though defective in form, is of a nature appropriate to present a defence to the action, and consequently could not be stricken out upon mere motion, but could only be met by demurrer. The court below consequently erred also in striking out the sixth plea.- We come now to consider of the instructions, given and refused by the court. The first one asked by the plaintiff in error was, “that the plaintiff’s cause of action in this behalf accrued to him, whenever Royster as his deputy committed, default, or in other words, whenever Martin as sheriff became leg'ally liable for damages or expenses occasioned by the neglect of duty on the part of Royster, as his deputy.” This instruction was clearly right, and consequently the court erred in refusing to give it in charge.- The second is “that so soon as Royster, as Martin’s deputy, collected money on execution Martin became liable to the party entitled to the money, and at the same time his cause of action on the bond here sued on, would be complete, and the statute of limitations would commence running from that period. This was properly overruled for two reasons. In the first place, Martin’s legal liability was not fixed the instant the money was collected by Royster, but his failure to pay it over on the return day of the execution, and according to the command of the writ fixed his liability to a suit; and secondly, the statute did not commence running from that time as there was none in existence that could operate upon it, but from the 20th March, 1839, the day that the act went into operation. The third is that, “if the jury are satisfied from the evidence that Royster received the money and failed to account for it, and that Martin became liable to the party entitled to the money collected by Royster, as his deputy, more than five years next before the institution of the suit, they are bound to find for the defendant Badgett on the issue to his third plea.” This was properly overruled as it looked to the time that fixed the liability of Martin, and not to the passage of the act of the 20th March, 1839, as forming the periodfrom which the statute commenced running. The court then instructed the jury on the motion of the plaintiff below that “although the plaintiff might have had a right of action for nominal damages, yet that the causes of action in the declaration did not accrue, nor did the statute of limitations commence running until the payment of the money by the plaintiff to the said Jacob Reider. This was manifestly wrong, as the cause of action did commence running long before the actual, payment of the money by Martin to Reider. We are satisfied then that there is error in the judgment of the circuit court in this case rendered, and that therefore the same ought to be and the same is hereby reversed, annulled and set aside with cost, and it is ordered that this cause be remanded to to said circuit court, to be proceeded in according to law and not inconsistent with this opinion, and also that both parties have leave to amend their pleading or file additional pleas, if they shall desire to do so.