By the Court,
Robertson, Ch. J.
The sole grounds for applying for a re-argument in this case are, first, that the court overlooked authorities which established conclusively, the right of the plaintiffs to recover damages for non-payment of the assessment in question by the defendant, contrary to his covenant, to the extent of such assessment, and second, that it had erred in supposing that it could not decree specific performance of such covenant under the pleadings as they stand. This court had occasion in the recent case of Newell v. Wheeler, (ante p. 190,) to specify the nature- of the cases in which a re-árgument may properly be had, and noticed their limited character. It had occasion also to remark upon the indecorum of substantially an appeal, upon the same points, from a *373 court consisting of one set of judges to one consisting of .others, and to point out that the sole remedy for error in such case was by appeal, the only grounds of re-argument even in a court of last resort being the- entire failure of the court and counsel to notice an important legal question or a recent decision or statute. (Mount v. Mitchell, 32 N. Y. Rep. 702.) It is plain that the general effect of permission to re-argue questions, merely because they had been carelessly or slovenly argued on the first occasion, would be to encourage remissness on the part of counsel and throw upon the court the whole labor of investigating such questions, while the privilege would remain with the counsel of endeavoring by more laborious research to impress a differently constituted court with different views. The delay,'too, to parties would be a sufficient ground for refusing a re-argument, since even after a decision upon it, the right of appeal would still remain. In this case both the questions -now raised were substantially passed upon by the court, although perhaps only the first was argued. One of the propositions, laid down in the printed points used on behalfj of the plaintiffs on the former argument, was, that the covenant was not a mere warranty against liens, but an absolute agreement to pay, and several decisions were cited to sustain that proposition. It was clearly passed upon in the opinion of the court. The other, of the power of the court to decree specific performance, was apparently not considered, and may perhaps deserve consideration, if necessary, for the decision of the case.
It .is very evident that if the plaintiffs can recover the amount of the assessment as damages in an action at law, they would not be entitled to specific performance, in equity, as their remedy at law would be adequate and completé. In order to determine, therefore, whether specific performance can be enforced, it becomes necessary to consider preliminarily how well established the doctrine is, that the amount of the assessment cannot, before it is paid be recovered as damages, in an action upon a breach of covenant to pay it. It is very evident the plaintiffs are never damnified to that extent, unless *374 they are obliged to pay and do pay the assessment. There must he some essential difference between the payment of money to a third person and doing some other act for a third person, which enables the covenantee in the former case to recover such sum as liquidated damages, hut in the latter, only the amount of the actual injury to him. There can he no question of the right of the plaintiffs to some damages on the breach of any covenant; the only difficulty is as to the amount. The cases of Port v. Jackson, (17 John. 239;) S. C. in error, (Id. 479;) Holmes v. Rhodes, (1 Bos. & Pul. 638;) Hodgson v. Bell, (7 T. R. 97 ;) Touissant v. Martinnant, (2 id. 100;) Martin v. Court, (Id. 640,) and Saward v. Anstey, (2 Bing. 519,) S. C. (10 Moore, 55;) only establish that an action may he sustained without averring special damages. In Post v. Jackson, (ubi sup.) the question was, whether an assignee or lessee is relieved from a covenant to pay rent, by the assignment of the lease to a third person and the payment by him of rent. It was held in it, as in the before mentioned cases of Holmes v. Rhodes, Hodgson v. Bell, Touissant v. Martinnant, Martin v. Court, and Saward v. Anstey, that it was not necessary to allege any specific damnification of the covenantor, to enable him to recover. In Chase’s adm’r v. Hinman, (8 Wend. 452,) the covenant was, to indemnify against any liability to which the covenantor might be subjected by the reversal of a judgment, and it was held he could recover for costs for which he became liable. In Thomas v. Allen, (1 Hill, 145,) the condition of a bond, to pay a sum to the plaintiff by satisfying a bond and mortgage executed by third parties and to save the plaintiff harmles, was held to impose a positive obligation to pay at the day, and no damnification was necessary. In Churchill v. Hunt, (3 Denio, 321,) the bond was conditioned, to save the maker of a promissory note harmless from liability thereon and to pay the same, or cause it to be paid, and the same doctrine was held applicable. In all such cases to save harmless means something more than to pay.
Some distinction is observed in the cases where a covenant *375 is made to pay a third person, and such payment is to relieve the covenantor from a personal liability, as in Thomas v. Allen, (ubi sup.) and Penny v. Foy, (2 Man. & Ryl. 181,) where the covenantee was liable for the debt agreed to be paid. In the latter case, the defendant, being liable for an annuity, received from the plaintiff’s assignor, who was a bankrupt, a bond conditioned for its payment, which he set off in the action against him. The whole of the reasoning of Lord Tenterden in that case was founded on the fact of the defendant’s liability for such annuity. He said: “ The defendant was entitled either to have the annuity paid by the bankrupt or to have the money deposited in his own hands to enable him to pay it. He was not bound to pay it first out of his own pocket and then apply to the bankrupt to reimburse him. As it is, he is liable for the arrears of the annuity and he has no security or remedy, except the bond, which I think he had a right to put in suit as soon as default was made.” In Saward v. Anstey, (ubi sup.) the covenantee did not appear to be primarily liable for the annuity agreed to be paid, but it was wholly a question of pleading, whether it was necessary to aver damnification.
In Gilbert v. Wiman, (N. Y. Rep. 550,) where the bond in suit was as well to indemnify the obligee against liability on his own note and to pay it, as against the acts or omissions of another, it was held that, for any liability growing out of such acts, he was not entitled to recover until actual damage by payment was shown, but that he might recover for the amount of such note. I have not, however, been able to discover any case, in which, upon a covenant to pay a sum of money to a third party, for which the covenantee was not personally responsible, a recovery could be had by the latter, without damage by forced payment. In no other case could it appear upon the face of the covenant, that the covenantee will necessarily be damnified by the non-payment. Even in the case of incumbrances on lands, non constat but what he may prefer to abandon the lands rather than pay the incumbrance, or at all events that he will necessarily be damnified to the full amount of the incumbrance. In the case of Lethbridge *376 v. Mytton, (2 B. & Adol. 772,) which was an action on a covenant in a marriage settlement to pay off incumbrances within a year, it was evident that the cestui que trust of the covenantees would be damaged to the extent of the incumbrance, and that it was the duty of the covenantor to pay them off,- or, to use the language of Lord Tenterden in Penny v. Foy, (ubi sup.) to deposit the money in the hands of the trustees to pay them.
Until therefore the plaintiffs paid the incumbrances in question, or otherwise sustained damage by the non-payment, I must conclude they could not recover more than nominal damages.
The other suggestion still remains to be disposed of, that the plaintiffs had a right to a specific performance of the covenant. It is a universal rule that where money is a sufficient compensation for the breach of a contract, equity will not interfere, (Carter v. United Ins. Co., 1 John. Ch. 463; Ord v. Johnson, 1 Jur. N. S. 1063, per Stuart, V. C.; Clayton v. Illingworth, 10 Ha. 451; South Wales Railway Co. v. Wythes, 1 K. & J. 186; S. C. 5 De G. M. & G. 880,) and this is peculiarly the case where the only act to be done is the payment of money. Another consideration also ought to prevent sustaining an equitable jurisdiction to enforce the covenant, to wit, that the only means of enforcing the judgment of the court would be by process of contempt and imprisonment; whereas in an action at law for damages, the remedy would be by execution. I am inclined therefore to doubt whether the court has jurisdiction to compel the defendant to pay the assessment in question to the municipal officers.
Hor am I prepared to dissent from the view taken by this court when this case was before it at a former general term, (ante p. 1,) that- the pleadings -as they stand would not warrant a compulsory judgment against the defendant to pay the assessment. It is clear if it was an equity cause, it was not triable before a jury, since no judgment could be rendered upon a verdict on all the issues, except for money pursuant to the finding. A judgment that the defendant pay the assessment *377 to the city collector, could only he given after a trial before a judge without a jury, and the question whether this is an equity case could only he determined upon appeal from a judgment rendered on such trial.
The motion for a re-argument must therefore be denied, with costs. •