## J. B. MITCHELL et al. v. P. W. LONG.

Western Section.    August 5, 1927.

Petition for Certiorari denied by Supreme Court, December 17, 1927.

1. **Appeal and error.    Practice.    The position of the parties in an equity case does not shift on appeal.**
   When an appeal in an equity case is taken the position of the parties does not shift and the case should be entitled in the appellate court the same as in the lower court.

2. **Equity.    A court of equity is not concerned with technical names of things.**
   It was settled at the very origin of the chancery court that equity did not trouble itself about the technical names of things, but interested itself with substance and meaning.

3. **Bonds.    A bond given to secure the removal of a lien is not a penal bond.**
   In an action to recover on a bond which was given to guarantee to the vendee that certain liens against the land conveyed would be removed, held that the bond was not a penal bond and could be sued upon if the lien was not removed at the date provided.

**4. Contracts. Damages. Measure of damages for failure to comply with contract on demand.**

Where a party agreed to remove a lien by a certain date and did not do so, but removed the lien later, held in an action for damages the party was entitled to recover on such damages as actually accrued by the lien not being removed at the date specified.

**5. Contracts. Damages. Plaintiff entitled to recover interest paid on mortgage which defendant failed to pay.**

Where defendant contracted with plaintiff to remove a certain mortgage at a time stated, and he failed to do so, held that the plaintiff was entitled to recover all interest paid on the mortgage from that date until it was removed.

Appeal from Chancery Court, Obion County; Hon. V. H. Holmes, Chancellor.

Modified and affirmed.

Pierce & Fry, of Union City, for appellant.

E. A. Morris, of Obion, and F. J. Smith, of Union City, for appellee.

HEISKELL, J.    This case is given an incorrect title in the transcript and briefs. It should be Long v. Mitchell. Long is the complainant and while Mitchell is appellant, the position of the parties in an equity case does not shift on appeal. Long will be referred to as complainant and Mitchell as defendant.

By trust deed of the date of January 28, 1922, J. B. Mitchell and wife, Dora Lee Mitchell, conveyed to the Federal Land Bank of Louisville, Kentucky, 108 acres of land in the 6th Civil District of Obion county, Tennessee, to secure $5,000 of borrowed money, evidenced by notes in accordance with amortization tables promulgated by the Federal Loan Board, etc.; the payments, as per said trust deed, calling for a preliminary interest payment at the rate of six per cent on $5,000 from January 28, 1922, and thereafter sixty-five semi-annual payments of $175 each, payable on the first days of October and April in each year, and a final payment of $145.90 payable on April 1, 1955.

By deed dated November 24, 1924, J. B. Mitchell and wife, Dora Lee Mitchell, conveyed to John Cloar by warranty deed fifty acres of land in the 6th Civil District of Obion county, Tennessee, twenty-eight acres of which was a part of the 108 acres already encumbered in behalf of said Federal Land Bank, as afore recited.

In said deed is this language:

"The consideration above expressed, to-wit, the sum of $4500, is paid and to be paid as follows: $1500 of said sum is paid in cash, whereof we acknowledge receipt, $1,000 is to be paid in one year from date hereof, and this amount is evidenced by the promissory note of said Cloar, payable to the order of said J. B. Mitchell, bearing interest after date at six per cent, and the remaining $2,000 of said consideration is paid by the bargainee

assuming and agreeing to pay that much of a certain debt owed by J. B. Mitchell to the Federal Land Bank of Louisville, the whole amount of which debt was originally $5,000, and all of which debt still unpaid is a lien on the entire tract of 108 acres, of which the first tract above described (the twenty-eight acres) is a part, as herein above explained. Said debt of $5,000 was contracted by said Mitchell about February, 1922 (January 28, 1922) and the trust deed conveying said 108 acres to secure the payment of said debt is of record in the Register's office of Obion county, Tennessee . . . It is further agreed that the bargainee herein, the said Cloar, is to pay his proportionate part of said debt to the Federal Land Bank at Louisville, as will be due on October 1st and April 1, 1925; and his failure to make any of said payments when due will be a breach of his contract, and upon such default on his part the note for $1,000 herein above mentioned, given as a part of the purchase price for said land, may be declared due by the holder at once, and the lien to enforce the same may be enforced at once, the same as if said note had matured. . . . But should Cloar fail to perform his covenant to pay taxes, and his proportionate part of the debt to the Federal Land Bank at Louisville," . . .

By deed of January 6, 1925, J. B. Mitchell and his wife, Dora Lee Mitchell, conveyed to P. W. Long the remaining eighty acres of said 108 acres encumbered with trust deed in behalf of said Federal Land Bank, as afore stated; said deed to P. W. Long being a warranty deed, and containing the following language:

"To have and to hold the said land, together with all the appurtenances and hereditaments thereunto belonging, to the said P. W. Long, his heirs and assigns forever. We covenant that we are lawfully seized and possessed of said tract of land, that we have a good right to convey the same, that it is encumbered as hereinafter set out, and that we will warrant and forever defend the title against the lawful claims of all persons whomsoever."

The consideration for said conveyance was $5,000 in cash paid by said P. W. Long to J. B. Mitchell, and the assumption by P. W. Long of that part of the indebtedness in favor of the Federal Land Bank, which the said Cloar had not assumed in the purchase of the twenty-eight acres.

It was also a part of the consideration of said deal and purchase of said eighty acres that J. B. Mitchell, with L. M. Shore and D. H. Burnett as his sureties, should enter into a written obligation and contract with equal date of said deed (January 6, 1925), protecting him, P. W. Long, against such situation, and which was accordingly done; said written contract and obligation being in the following language:

"Know all men by these presents, that we, J. B. Mitchell, as principal, and D. H. Burnett and Luther Shore as sureties, are held and firmly bound unto P. W. Long in the sum of $2,000, lawful money of the United States, to be paid to the said P. W. Long, his executors, administrators and assigns, to which payment well and truly to be made we bind ourselves, our heirs, executors and administrators firmly by these presents, this January 6, 1925.

"The condition of this obligation is such that whereas by deed dated November 24, 1924, registered in Book X, page 534, of the records of the Register's office of Obion county, Tennessee, the undersigned, J. B. Mitchell and his wife, Dora Lee Mitchell, bargained, sold and conveyed to John Cloar a certain tract of land fully described in said deed as 'first tract,' containing twenty-eight acres.

"And whereas as a part of the consideration of said conveyance the said Cloar assumed and agreed to pay $2,000 of a certain debt owed by said Mitchell to the Federal Land Bank of Louisville, said $2,000 being a part of the indebtedness which originally amounted to $5,000, and which was secured by a deed of trust on a tract of 108 acres, conveyed to said Mitchell by J. H. Leper et al.," etc.

"And therefore, whereas the said J. B. Mitchell has now sold and conveyed of even date herewith all the remainder of said 108 acres to P. W. Long, who has assumed and agreed to pay all of said debt not assumed by the said Cloar, as above set out.

"And whereas the entire tract of 108 acres is encumbered by said debt to the Federal Land Bank of Louisville; and whereas the said Mitchell has agreed, and does hereby covenant that by December 5, 1925, he will pay, or cause to be paid the sum of $2,000 to the Federal Land Bank of Louisville, and will procure or cause to be procured a full and complete discharge and release of any and all liens existing against the said land this day conveyed to P. W. Long, to secure so much of said debt as was assumed by said Cloar, as above set out.

"Now should the said J. B. Mitchell procure or cause to be procured on or before December 15, 1925, a full and complete discharge of the lien existing against the said land this day conveyed to P. W. Long, to secure so much of said debt as was assumed by said Cloar, then this obligation shall be null and void; otherwise to remain in full force and virtue."

"Witness our hands, the day and date above written."

(Signed) "J. B. Mitchell,<br>
"L. M. Shore,<br>
"D. H. Burnett."

Defendants Mitchell, Shore and Burnett did not procure the discharge of the lien in favor of Federal Land Bank, as contracted for in said written obligation, or in any way, and did not pay, or offer to pay to the Federal Land Bank the $2,000, or proportionate part of the indebtedness in behalf of said Bank on account of the twenty-eight acres sold to Cloar; and after having notified them to do so, both before and after December 15, 1925, complainant (below) P. W. Long six months after December 15, 1925, and on the 25th day of May, 1926, filed this bill in the chancery court of Obion county, against Mitchell, Shore and Burnett, for the $2,000 and interest from December 15, 1925. Complainant prays, in the prayer of the bill, for general relief and all other relief that he may be entitled to in the cause.

After the case was prepared, proof taken, etc., that Chancellor rendered the following decree:

| | |
|---|---|
| "P. W. Long ) | Be it remembered that this cause |
| ) | came on to be and was on this the |
| v. ) | 6th day of April, 1927, heard before |
| ) | fore the Honorable V. H. Holmes, |
| "J. B. Mitchell, et al. ) | chancellor, upon the original bill |

and exhibits thereto, the answer and as filed as a cross-bill, and the answer to same, and upon all of the exhibits and the entire record of every nature whatsoever; and when, from all of which, it appears to the court that complainant is entitled to, and there is hereby rendered in his behalf, a judgment of this date for $2,000 (two thousand dollars), and all costs of the cause, and which this court adjudges and decrees; and that defendant J. B. Mitchell is entitled to, and there is hereby rendered in his behalf a judgment of $1 (one dollar) against complainant P. W. Long for failure to satisfy and discharge the lien on the seventeen-acre tract of land before the filing of the answer as cross-bill by defendant Mitchell, but that defendant Mitchell is entitled to no judgment for any part of the costs of this suit; but it is ordered by the court that said judgment for $2,000, with any interest accrued thereon from this date, to be paid by defendant J. B. Mitchell to the Federal Land Bank at Louisville, as a credit on that part of said indebtedness to the Federal Land Bank which defendant Mitchell and J. H. (John) Cloar owe; and a receipt from said Federal Land Bank to the defendant Mitchell for said $2,000, and whatever interest on said amount accrues from this date to the date he pays to said Federal Land Bank, shall, when produced and delivered to the Clerk and Master of this court and filed in this cause, operate as a satisfaction of the principal and interest of said $2,000 judgment above rendered herein. But

it is ordered by the court that if said Federal Land Bank will not accept and receipt said Mitchell for said $2,000 and interest, aforesaid, within thirty days from this date, the said Mitchell may then pay said $2,000, with accrued interest to date of payment to Clerk and Master, into the hands of the Clerk and Master, and that the Clerk and Master shall receipt him therefor, and which will then satisfy said $2,000 and interest accrued thereon; but if the said Mitchell does not either pay to the Federal Land Bank and procure receipt and file same within thirty days from this date, or does not so pay to the Clerk and Master within thirty days from the thirty days allowed him to so pay the Federal Land Bank, then execution may issue on said $2,000 judgment, and interest and costs of suit, if they be not paid; and it is further ordered by the court that the costs incident to the paying into the hands of the master said $2,000 judgment and interest, and the paying out of same by the master, by reason of commission to the master or other costs accruing on such account, shall be paid by defendant Mitchell, and which the court adjudges and decrees; and all of which the court orders, adjudges and decrees.''

Mitchell, Shore and Burnett have appealed and assigned errors, and complainant Long has presented the record for error and filed one assignment.

Defendant's first assignment is to the effect that it was error to decree in favor of Long to the amount of $2,000 on the bond because said bond is a penalty bond and no damages were alleged or proved.

It was settled at the very origin of the chancery court that equity did not trouble itself about the technical names of things, but interested itself with substance and meaning.

This was a bond to pay off or discharge a lien to the extent of $2,000 on the land sold by Mitchell to Long, by the 15th of December, 1925. The Federal Land Bank mortgage ran until 1935, but $2,000 of the $5,000 was to be discharged by Mitchell by December 15, 1925, and the bond was to secure this. It was a bond against liability, against the existence of the incumbrance, the cloud on Long's title to that extent, after that time. It was not a bond against ultimate loss.

It is true Long has not paid off this $2,000, but his contract was to have this incumbrance removed. There can be no question as to penalty or liquidated damages. It was a bond to insure the payment of a specific amount to remove a specific lien. Suppose in a sale of land just after January 10th the vendor agrees to pay the taxes of that year by September 1st and gives a bond to insure the payment. Could any question be raised as to a penalty or liquidated damages. Or could it be said that the rendee must wait and let his

property be sold for taxes and even then be told that there is no danger of loss by reason of a tax sale in Tennessee? We think not. The vendee could recover on the bond after September 1st, and if interest and penalties accrued this could also be recovered.

In Macey v. Childress, 2 Tenn. Ch., 443, Chancellor Cooper discusses this question, saying:

".'The objection of the demurrer that Harris could not sue until after he had sustained a loss, means, I take it, that he must actually have paid the money. For, if there can be a loss in any other sense, it has already been sustained, the bill showing that Childress has moved from the State, and is insolvent. The question is; has Harris a right of action before the payment of loss? If the promise had been to indemnify him from loss, the point would probably have been well taken. Ward v. Fryer, 19 Wend., 494; Jones v. Shorter, 1 Kelly (Ga.), 294. But the promise was; 'You shall never be held liable upon the bond, or annoyed about it in any way,' which is a promise to indemnify against liability. The rule is upon such an obligation that the right of action accrues as soon as the party becomes liable to pay, and it is not postponed until actual payment. Webb v. Pond, 19 Wend., 423; Chas v. Hinman, 8 Wend., 452; Rockfeller v. Donnelly, 8 Cow., 623; Gilbert v. Wiman, 1 Comst., 550.

"The substance of the agreement, moreover, is that Martin will see that the debts secured in the trust deed are paid (the contract in this instant case require the same thing to be done), so that Harris shall not be annoyed by them. In this view, admitting the validity of the agreement, the case falls exactly within the principle settled in Ranelaugh v. Haynes, 1 Vern., 189; s. c. 2, Ch. Cas., 146, the leading case on this branch of the law.

"There the Earl of Ranelaugh assigned several shares of the excise in Ireland, which he held under obligation to the crown, to the defendant who agreed to indemnify and save him harmless from all payments, charges and actions on behalf of the crown.

"Upon bill filed, the defendant insisted that there was no proper subject of equity, but a general and personal covenant of indemnity sounding in damages, to be ascertained at law; that the bill assigned no breach, and only that a suit had been brought against complainant, and, if nothing be recovered, there is no breach. But the lord keeper thought fit to decree that the defendant should perform his covenants, and referred it to the master, and directed that toties quoties any breach should happen, he should report the same specially to the court, and decreed that defendant should close the litigation in a reasonable time. And he compared it to the case of a counterbond, where, although the surety is not troubled or molested for the

debt, yet at any time after the money becomes payable on the original bond, this court will decree the principal to discharge the debt, it being unreasonable that a man should always have such a cloud hang over him.

"It is (continues the court) upon substantially the same principal that that sureties are, under certain circumstances, permitted to go into this court in advance of payment, to obtain contribution, indemnity, or the benefit of liens and securities."

Again, in 3rd Tennessee Chancery Reports, in case of Wilson v. Davidson county, page 541:

"A distinction has been made as to the point of time at which a right of action accrues on a bond of indemnity, based upon the fact whether the obligation was to indemnify from loss, or against liability. (Citing said Macey v. Childress case, 2 Tenn. Chy., 443, above cited, and the cases there cited.)

"In the former case (says the court) the loss must be actually incurred, while in the latter, the object is to prevent actual loss. And no difficulty has been felt where the obligation is to indemnify against claims and actions, nor, of course, where it is to secure a party 'aganist all claims, or suits at law, or both.' For these words plainly import indemnity against the claims and suits, not against the ultimate loss by recovery.

"And the right to come into equity in such cause is beyond question, for there would be no way of satisfactorily estimating the damages at law in advance of actual recovery, and a new suit would be required for every subsequent breach. . . . 'There are cases to show,' says Chancellor Kent, 'that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, upon the principle on which the court entertains bills quia timet.'"

The cases cited for appellant are of a different character and not in conflict with the rule indicated in the Tenn. Ch. cases, cited supra.

It was a part of the consideration of the sale of the twenty-eight acres to Cloar that he should pay off this $2,000 of the $5,000 encumbrance. The bond insured that if Cloar did not do it he, Mitchell, would, by December 15, 1927.

Long, as part of the consideration for the eighty acres, assumed $3,000 of the $5,000 mortgage debt. Mitchell says he was ready to pay the $2,000 if Long would pay the $3,000. But Long was not bound to pay the $3,000. He assumed that and could let it run as long as the mortgagee would permit. His nonpayment was no excuse to Mitchell.

This assignment is overruled.

The second assignment of defendants is that the court erred in not giving Mitchell, upon his cross-bill, a decree for $500 instead of $1, for failure of Long to discharge a lien on a tract of land purchased

by Mitchell from Long. It is admitted that Long agreed to remove said encumbrance and it is admitted that he has done so, but the contention seems to be that he did not do so when demand was first made by Mitchell, and that thereby the loss resulted to Mitchell.

In this branch of the case Mitchell is suing not for failure of Long to pay a specific amount at a particular time, but for damages resulting from a failure to comply with a contract on demand. The cross-complainant does not make out a case for damages. He alleges in his cross-bill that he could have sold the property at a profit but for the lien and that the price of property has declined. He does not state that he wanted to sell the land. He says he had an opportunity to sell and could have sold at a profit of twenty-five dollars or more an acre, but could not sell by reason of the lien.

The fact that he could have sold at a profit and that the price of the land has declined does not make out a case for a recovery unless he wanted to sell. It is at least doubtful whether he could introduce proof under the allegations of the cross-bill that would warrant a decree. But the proof is not much stronger than the allegations. He says:

"Q. 28. Did you try to sell this tract of land? A. Yes.

"Q. 29. Could you have sold it if the lien had been released? A. Yes sir.

"Q. 30. You have said that you were damaged. Now tell in what way you were damaged and how much you were damaged by his failure to release the lien. A. The spring of 1925, about May the first or second, I had an opportunity to sell this land for a good price, but the man would not buy it unless I could get it released, and land has since that time depreciated in value thirty or forty per cent.

"Q. 31. How much has this tract of land depreciated from May 1, 1925, to now? A. I would say on a low estimate thirty dollars an acre."

He does say he tried to sell and had an opportunity to sell for a good price. He does not say an offer, nor from whom, nor for how much. His testimony indicated that only one person signified a willingness to buy. The only witness introduced, who testified to any inclination whatever toward buying this land, was T. J. Whiteside. This is all he has to say, except that the price of land has decreased in Obion county:

"Q. 1. Please state your name, age, occupation and residence? A. Joe Whiteside, farmer, forty-six years old, Rives, Route #2.

"Q. 2. Do you know Mr. J. B. Mitchell, did you in April and May, 1925, look at a farm that he was trying to sell you? A. Yes sir. I couldn't say whether it was April or May or not, but it was the spring of 1925.

"Q. 3. Do you recall how many acres was in the place? A. I think he told me seventeen acres to the best of my recollection.

"Q. 4. Did you examine the farm with the view of becoming the purchaser? A. I looked it over from the road."

He does not say he made an offer, that he and Mitchell agreed on a price, or that he was prevented from buying by the encumbrance on the land.

The testimony of both Mitchell and Whiteside is more significant in what it does not contain than in what it does. Then besides, P. W. Long says the land was valued in the trade with Mitchell at $75 per acre, and both he and F. M. Long testify that they are willing to pay Mitchell $75 per acre for the land. That while land generally has declined in value, this land, by reason of an improved road, has not.

The case made out by Mitchell upon his cross-bill did not entitle him to a decree for damages. This assignment is overruled.

The third assignment is that the court erred in taxing the defendant with all the costs. This was in the discretion of the Chancellor and there was no abuse of his discretion. The only thing decided in favor of the defendant was the $1 damages for a technical breach of the agreement to discharge the lien on demand. No objection is urged to this and it will not be disturbed, but it is no ground for dividing the costs. The assignment is overruled.

The complainant insists that it was error not to include in the decree interest on the $2,000 from December 15th, the time it was to be paid by Mitchell in reduction of the mortgage, until the date of the decree, April 6, 1927. It was a part of the agreement of purchase by Long from Mitchell that the vendee should hold the land discharged of this portion of the mortgage not later than December 15, 1925. This mortgage was drawing interest. Complainant was entitled to have the mortgage reduced by $2,000 on December 15, 1925. If the reduction was not made then complainant at any time thereafter was entitled to have the mortgage reduced by $2,000 and the interest thereon from December 15, 1925.

This assignment is well taken and is sustained and the decree is modified accordingly by the addition of interest from December 15, 1925, to April 6, 1927. A decree will be entered for said amount, with interest and costs, against the defendants and sureties on their appeal bond.

Owen and Senter, JJ., concur.