## GILBERT vs. WIMAN and others.

In contracts of indemnity where the obligation is to perform some specific thing or to save the obligee from a charge or liability, it seems the contract is broken when there is a failure to do the specific act, or when such charge or liability is incurred.

But where the obligation is that the party indemnified shall not sustain *damage or molestation* by reason of the acts or omissions of another, or by reason of any liability incurred through such acts or omissions, there is no breach until actual damage is sustained.

And in such cases a judgment recovered against the party indemnified, on account of the acts or neglect of another for which he is answerable, without payment of the judgment, or some part thereof, does not entitle him to sustain an action against the indemnitors.

A deputy sheriff and his sureties executed to the sheriff a bond, conditioned that the deputy should so demean himself in all matters touching his duty, that the sheriff should not sustain *any damage or molestation by reason of any act done or liability incurred* by or through such deputy. The sheriff was sued and judgment recovered against him for a default of the deputy in not returning an execution. Other judgments were also recovered against him and his sureties upon bonds given to discharge himself from arrest under attachments issued against him for not returning other executions in the hands of the deputy. No part of the judgments having been paid by the sheriff, and no actual damage being shown, *held*, that there was no breach of the bond of the deputy and his sureties, and that the sheriff could not maintain an action thereon.

THIS was an action of debt instituted in the supreme court by Jabez H. Gilbert against Stephen Luce, Gideon H. Woodruff, Truman Wiman and Lucas Van Schaack, upon a bond executed by the defendants in the words following, viz:

"Know all men by these presents, that we, Stephen Luce, Gideon H. Woodruff, Lucas Van Schaack, Truman Wiman, are held and firmly bound unto Jabez H. Gilbert, Esqr., sheriff of the county of Oswego, in the penal sum of ten thousand dollars, for which payment well and truly to be made to the said Jabez H. Gilbert, his executors, administrators and assigns, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals and dated this eleventh day of May, one thousand eight hundred and thirty-eight. The condition of this obligation is such, that whereas the said Stephen Luce has been appointed to the

Gilbert v. Wiman.

office of deputy sheriff by the above named Jabez H. Gilbert, sheriff as aforesaid—Now therefore, if the said Stephen Luce shall so demean himself in all matters touching his duty as such deputy sheriff, that the said sheriff shall not sustain any damage or molestation whatsoever by reason of any act from this date done, or any liability incurred by and through said deputy, then this obligation to be void, otherwise of force.

STEPHEN LUCE, (L. S.)
G. H. WOODRUFF, (L. S.)
TRUMAN WIMAN, (L. S.)
L. VAN SCHAACK, (L. S.)"

The declaration assigned, as the first breach of the condition of the bond, that Luce as such deputy sheriff neglected to return an execution placed in his hands for collection, and that on account of such neglect the plaintiffs in the execution brought an action against the plaintiff in this suit, as sheriff, and recovered judgment against him for $441,18. There was no averment that the plaintiff had paid any part of this judgment. In the assignment of the second breach it was stated that the said Luce neglected to return another execution placed in his hands, and that on account of such neglect the plaintiff, as such sheriff, was attached as for a contempt of court at the instance of the plaintiffs in the execution, and held in custody until he gave bail for his appearance to answer to the attachment; that he failed to appear on the return of the attachment, by reason whereof the bail bond became forfeited and was ordered by the court to be prosecuted; and that the plaintiff and his sureties in such bond were sued and judgment recovered against them; but there was no averment that any part of that judgment had been paid. The third and fourth breaches were substantially like the second, except that they related to other executions which the deputy had neglected to return.

The defendants Wiman and Van Schaack pleaded, among other pleas, that the said Stephen Luce had always well and truly demeaned himself in all matters touching his duty as such deputy sheriff, and that the plaintiff had not sustained any damage or molestation whatsoever by reason of any act done

or liability incurred by or through the said Stephen Luce as such deputy.

The cause was tried before GRIDLEY, circuit judge, in July, 1845, and on the trial the plaintiff proved the execution of the bond declared upon, and the substantial truth of the matters averred in the assignment of the several breaches. The aggregate amount of the judgments recovered against the plaintiff, as such sheriff, mentioned in the several breaches, was shown to be $2948,41, but there was no proof of the payment of those judgments, or any part thereof. It was insisted for the plaintiff, that he was entitled to a verdict for the penalty of the bond and to have his damages assessed at the amount of the judgments. For the defendant, it was insisted that without proof of the payment of the judgments, the plaintiff was entitled to nominal damages only, and so the circuit judge decided. To this decision the plaintiff excepted, and then submitted to a nonsuit with leave from the court and consent from the defendant's counsel to move for a new trial. A bill of exceptions was duly signed and sealed, on which the supreme court sitting in the fifth district granted a new trial. The following is the opinion of that court.

PRATT, J. The condition of the bond upon which this action is brought, is as follows, "that if the said Stephen Luce shall so demean himself, in all matters touching his duty as such deputy sheriff, that the said sheriff shall not sustain any damage or molestation whatever, by reason of any act, from the date of the said writing obligatory, done, or liability incurred by or through said deputy, then the obligation to be void." It is an undertaking to save the plaintiff harmless from all damage or molestation, by reason of any liability which might be incurred by him through the acts of said deputy; and the question on this obligation is, whether the sheriff, after proving a breach of such obligation, and a fixed liability for a certain sum, in consequence thereof against himself, can recover, without proving payment of the judgment, any more than nominal damages.

Perhaps there is no branch of law, concerning which the de-

Gilbert *v.* Wiman.

cisions of our courts have been more fluctuating, than in relation to damages, especially in relation to the damages arising upon contracts, in the nature of contracts of indemnity. According to strict legal principles, a court of law, it would seem, should only give actual compensation for actual loss; and such is the rule in relation to contracts of indemnity against damages merely. (*Aberdeen* v. *Blackman*, 6 *Hill*, 324; *Jackson* v. *Post*, 17 *John.* 482.)

So as to covenants in relation to real estate, the courts have adhered to the same rule; for instance, in a covenant against incumbrances in a deed of real estate, although there should be found an incumbrance to twice the value of the land, nothing short of actual payment or eviction gives the grantee a right to recover any thing more than nominal damages. (*Van Slyck* v. *Kembal*, 8 *John.* 198; *Stannard* v. *Eldridge*, 16 *id.* 254; *id.* 122.) But in personal contracts, when the instrument deviates the least from a simple contract to indemnify against damage, even where indemnity is the sole object of the contract, and where in consequence of the primary liability of other persons, actual loss may be sustained, the decisions of our courts, although by no means uniform, have gradually inclined towards fixing the rule to be one of actual compensation for probable loss; so that in contracts of that character, it may now be considered a general rule, both in this country and in England. (*Thomas* v. *Alden*, 1 *Hill*, 146; *Holmes* v. *Rhodes*, 1 *Bos. & Pull.* 638; *Hodge* v. *Bell*, 7 *T. R.* 93; *Post* v. *Jackson*, 17 *John.* 239.) For instance, in an action on a covenant, that a bond or other debt upon which the covenantee is liable shall be paid when due, or on a day certain, it has been long settled that the plaintiff may recover the full amount of his liability, although it is evident, from the terms of the contract, that it was intended merely as an indemnity, and although the parties, primarily liable, are abundantly able to pay. (*Mann* v. *Eckford's ex'rs*, 15 *Wend.* 502; *Ex parte Negus*, 7 *id.* 499; 7 *T. R.* 97; 2 *M. R.* 181.) Indeed, the late supreme court have gone so far, in some recent cases, as to allow a full recovery when it did not appear that the plaintiff was liable at all.

or could be injured by a breach of the contract, the court deciding that they had a right to infer that the plaintiff had some interest in having the debt discharged, or he would not have made the contract. (*Thomas* v. *Alden*, 6 *Hill*, 146; *Tyler* v. *Ives*, *MS. Sup. Court*, 1839.) That the plaintiff had some interest in such a case, would be probable; but that he had an interest to the full amount of the original indebtedness, in the absence of proof, seems to be rather a violent presumption; such, however, is the effect of those decisions. In the last case cited above, Ives covenanted with Tyler that Raynor should pay up and discharge a bond and mortgage upon certain lands. There was no evidence to show that Tyler had any interest in the lands, or in the discharge of the bond and mortgage, or was in any manner liable upon the same; yet the court held that he was entitled to recover the full amount of the bond. So in an action on a bond for the jail liberties, the sheriff recovers the whole amount of the debt, on showing that he has been made legally liable, although he may never be called on to pay a penny—the creditor having it in his power to collect the amount of the original debtor, who may be perfectly responsible. (*Keep* v. *Brigham*, 6 *John*. 158; 7 *id*. 168.) So a contract of indemnity against liability is held to be broken when the liability is incurred, and the measure of damages is the full amount of such liability. (*Webb* v. *Pond*, 19 *Wend*. 423; *Rockfeller* v. *Donnelly*, 8 *Cowen*, 623; *Chace* v. *Hinman*, 8 *Wend*. 452.)

Whether the rule laid down in all these cases is not a departure from strict legal principles, it is not profitable now to discuss. It is said by a late writer on the subject of damages, "Any rule by which actual damages are given, where no actual loss is sustained, is in truth nothing but an effort to engraft on the courts of common law a species of specific performance, irregular and illegitimate, and which neither their forms of procedure nor the general arrangement of their system enable them to exercise without great danger of injustice and abuse. The rule should be considered cardinal and absolute, that actual compensation shall only be given for actual loss." (*Sedgwick on Damages*, 311.) However true these remarks may be in the abstract, and we admit their force, the rule is now settled

by adjudication otherwise, and we are bound to follow it until it shall be changed by a superior court, or the legislature shall interpose. The obligation in this case may be classed among the contracts of indemnity against liability—in which cases the plaintiff is entitled to recover the amount of the liability incurred. (*Webb* v. *Pond*, 19 *Wend.* 423; *Rockfeller* v. *Donnelly*, 8 *Cowen*, 623; *Chace* v. *Hinman*, 8 *Wend.* 452; *Warwick* v. *Richardson*, 10 *Mees. & Wels.* 284; 2 *Starkie*, 167; 1 *Burr.* 574; 5 *Carr. & Payne*, 102.) And this is so, even where the contract is in form to indemnify against damages to be incurred in consequence of such liability. Indeed, in the case of *Rockfeller* v. *Donnelly*, which was in the court for the correction of errors, the decision of the court went much further than is necessary to sustain the plaintiff's claim in this case. Although the soundness of the principle adjudged in that case has been often questioned, yet it must be deemed to be law in this state, until it shall be overruled by a court of at least equal authority. The case of *Chace* v. *Hinman* seems to be directly in point. The condition in that case was, that the obligor should save harmless and indemnify the obligee against all damages, costs and charges to which he might in any way be subjected or become liable by reason, &c. It was objected that the plaintiff should prove payment before he could recover more than nominal damages. But the court held that the plaintiff was entitled to recover the full amount of the liability incurred. Leaving out the word "molestation," (upon which we shall have occasion to remark,) the undertaking in that case, and the one under consideration, appear to be in legal effect precisely the same. The liability in both cases was against the damages arising therefrom. We are unable to distinguish between them. We are aware that the soundness of the principle adjudged in that case was questioned by Chief Justice Bronson, in *Aberdeen* v. *Blackmar*, but he admits, and such is the fact, that it only carries out the principle decided in *Rockfeller* v. *Donnelly*. We are not aware that either of the cases have been overruled.

In this case the plaintiff, by the contract, was not only to be saved harmless from damages, but also from molestation. Now

whether the commencement of a suit and the recovery of a judgment against the plaintiff, is molesting him within the strict sense of the term, no one will deny, we apprehend, that an arrest by an officer, under an attachment, is a molestation of no mild or trifling character, and such seems to have been the holding at the circuit, or the plaintiff could not have recovered nominal damages. It becomes us to inquire whether there were no other damages legitimately resulting in consequence of such arrest or molestation. The party is entitled to such damages as naturally flow from the breach complained of, the injury sustained, and that not the actual but the probable loss. The sheriff finds himself under arrest and is taken before the court and fined the amount of the execution, which his deputy neglected to return. It seems to us that this fine is a necessary result of the arrest, and should measure the damages. If there was any excuse for the deputy's negligence, by which the fine might be averted, it was the deputy's duty to interpose it. We assume, therefore, that there was no such excuse. Why then, as the fixed liability was the inevitable and immediate conse quence of the molestation or arrest, should it not be the measure of damages, as well as in a suit on a bond for the jail liberties? In both cases there might be a possibility of collecting the debt of the original debtor. It is in the nature of a tort on the part of the deputy, and may be likened to a recovery against the principal for the negligence of his agent or servant. The judgment against the principal is the measure of damages in a suit by him against his agent or servant, whether he has paid the same or not.

In this case a bond was given, and the recovery against the sheriff was had on that bond. This was only a more circuitous way of arriving at the same result. The ultimate liability of the sheriff is the same, and inevitably follows the arrest, unless the sheriff should appear, and then he would only escape liability on the bond, by subjecting himself to a fine for the same amount. As the law now stands we think the plaintiff is en titled to recover the amount of the liability proved.

From the decision of the supreme court the defendants appeal ed to this court according to the judiciary act of December, 1847

*H. A. Foster*, for the plaintiff. The plaintiff was entitled to recover the amount of the several judgments recovered against him; the circuit judge erred in deciding that he was entitled only to nominal damages; and the supreme court decided right in granting a new trial. When the obligation is to indemnify against damages and expenses, and the obligee has become absolutely bound and liable to pay the expense or damage, he may enforce his remedy on the obligation. (*Rockfeller* v. *Donnelly*, 8 *Cowen, per Jones, chancellor*, 639, 640; also *per Spencer, senator*, 657, 658, 659.) In *Rockfeller* v. *Donnelly*, the court for the correction of errors held, on a bond to *save, defend* and keep harmless the overseers of the poor and inhabitants of a town, of, from and against all costs, charges, rates, assessments, damages or expenses, by reason of the birth, education and maintenance of a bastard child, to be born, and of and from all actions, suits, troubles, damages and demands touching the same, that after the birth of the child and order of the justices directing the weekly allowance, an action could be maintained upon the bond by the overseers, to recover the weekly allowance to the time of the commencement of the suit, without having paid any part thereof.

Where a party has an indemnity not only against actual damages and expenses, but against any liability for damages or expenses, he need not wait to commence his suit until he has actually paid such damages; his right of action is complete, *for the whole amount*, when he becomes legally liable for them. (*Chace* v. *Hinman*, 8 *Wend.* 452; *Warwick* v. *Richardson*, 10 *Mees. & Wels.* 284; *Sparks* v. *Martindale*, 8 *East*, 593; *Wood* v. *Wade*, 2 *Stark. Rep.* 146; *Broughton's case*, 5 *Coke's Rep.* 24; *Rosse* v. *Pye*, *Yelv.* 207; *Cutler* v. *Southern*, 1 *Saund. Rep.* 116; 8 *Watts*, 157; 9 *Yerger*, 20; 1 *Hen. & Mun.* 459; 2 *Bay*, 145; 19 *Wend.* 423.)

In personal contracts, when the instrument deviates the least from a simple contract to indemnify against damage, even when indemnity is the sole object of the contract, where actual loss may be sustained in consequence of the primary liability of others, the decisions have gradually inclined toward fixing the rule to be one of actual compensation for probable loss.

Gilbert v. Wiman.

(*See cases cited in the opinion of the supreme court.*)    Thus, in
an action on covenant, that a bond or debt on which the cove
nantee is liable shall be paid when due, the plaintiff may
recover the full amount of his liability. (*Ex parte Negus*,
7 *Wend.* 499 ; *Thomas* v. *Alden*, 1 *Hill*, 146 ; *Mann* v. *Eck-
ford's Ev'rs*, 15. *Wend.* 502; *Hodgson* v. *Bell*, 7 *T. R.* 97 ;
*Challoner* v. *Walker*, 1 *Burr.* 574; 5 *Carr. & Payne*, 102.)
When a judgment has been recovered against the *principal*
for the negligence or unskilfulness of the *agent*, he may main-
tain his action against the agent, if he had notice of the suit
against the principal. (*Mainwarring* v. *Brandon*, 8 *Taunt.*
202.)    And the verdict fixes the amount to be recovered.
(*Dunl. Paley on Agency*, 7.)    The rule is the same between
master and servant.    Upon an implied warranty of title to per-
sonal property, or false affirmation of ownership, by the vendor,
when a recovery has been had against the vendee by the true
owner, he may sue and recover against the vendor, before pay-
ing the judgment. (*Barney* v. *Dewey*, 13 *John. Rep.* 224 ;
*Blasdale* v. *Babcock*, 1 *id.* 517.)    A sheriff may recover on a
bond for the jail limits, the amount of the debt, without actual
payment by him ; and yet it is only a bond to indemnify and,
save harmless. (*Janson* v. *Hilton*, 10 *John. Rep.* 549 ; *Barry*
v. *Mendell*, *id.* 563; *Kipp* v. *Brigham*, 6 *id.* 158; 7·*id.* 168.)
So he may recover against the debtor, who has escaped on final
process, whereby the sheriff has become liable, before he has
paid the debt. (*Sheriffs of Norwich* v. *Bradshaw*, *Cro. Eliz.*
53.)    He may recover against the keeper of a *lock-up-house*,
for the escape of a prisoner committed to his custody, upon his
promise to keep him safely and save the sheriff harmless for
any escape ; and this even before suit against himself. (*Bark
ley and Gibbs* v. *Kempstow*, *Cro. Eliz.* 123.)    He may also
recover upon the bond of his *under sheriff* or *deputy*, for an
escape on execution or for improperly discharging property at-
tached on *mesne* process; although he has not paid the debt
to the plaintiff. (*Norton* v. *Simmes*, *Hobert*, 12 (c.) ; *Cooper*
v. *Mowrey and others*, 16 *Mass. Rep.* 5 )    On a bond by
deputy to the marshal "*to keep the marshal clear, free and
indemnified,*" a breach that he failed to return executions

(specifying them) is well assigned. (*Lewis* v. *Crockett,* 3 *Bibb,* 196.)

*Geo. F. Comstock,* for the defendants. The general rule in regard to contracts of indemnity is that *courts of law* can only give actual compensation for actual loss. The line which separates the jurisdictions of law and equity is here visible. In courts of equity, on the principle of *quia timet,* a party who is under a liability, and has a counter indemnity, can compel the indemnitor to perform specifically, so as to exonerate him from his liability. (2 *Story's Eq.* § 850; *id.* § 815; 6 *John. Ch.* 406.) Courts of law have no jurisdiction of this nature. They can only give compensation for actual loss; and this distinction between the two jurisdictions is founded in sound policy, and ought to be maintained. In the present case, it would be a specific performance of the defendants' contract for them to pay the creditors whose executions have not been returned, and thus exonerate the sheriff from his liability; but a court of law cannot call before it the necessary parties, nor are its powers and functions adapted to that result. The plaintiff may recover the sum demanded, but there is no guaranty that it will go to its proper destination— the satisfaction of the execution creditors; nor would such a recovery prevent the creditors from still enforcing their executions.

In all the cases where it is supposed courts of law have gone beyond the rule of compensation for actual loss only, it will be found on a careful examination that the contracts were very different from the one in question. They were affirmative engagements for the performance of some specific thing, and not to indemnify against loss or damage by reason of the non performance of the thing specified. Such are the cases referred to in the opinion of the supreme court, and such are all the cases of any authority cited on the other side. In *Rockfeller* v. *Donnelly,* the condition of the bond was to *save* the overseers against *all charges,* &c. This was construed as a condition that no liability should come upon the town. The decision of that case was also placed very much upon the intent and policy

of the statutes under which the bond had been taken. In *Chase* v. *Hinman,* the condition of the bond was to indemnify against *a liability,* and the decision of that case can only be sustained upon the ground that the language used amounted to a condition that no liability should occur. But the principle of that case was disapproved in *Aberdeen* v. *Blackmar,* (6 *Hill,* 324,) and the case itself was overruled in *Churchill* v. *Hunt,* (3 *Denio,* 321.) In the cases of the bonds given for the jail liberties, (6 *Johns. Rep.* 158, 7 *id.* 168,) the condition was that the debtor should *remain a true and faithful prisoner.* Of course this was broken the moment the escape took place. The case of *Warwick* v. *Richardson,* (10 *Mees. & Welsby,* 284,) was in principle very much like *Rockfeller* v. *Donnelly,* already referred to.

In the case before the court, the condition of the bond is not to save or indemnify against a liability. It is that the sheriff shall sustain no *damage or molestation by reason of liability,* &c. In other words, it is simply a bond of indemnity against damage or molestation; and the well established doctrine in such cases is that actual loss must be shown. (*Cutler* v. *Southern,* 1 *Saund.* 116, *n.* 1; *Douglass* v. *Clark,* 14 *John.* 177; *Aberdeen* v. *Blackmar,* 6 *Hill,* 324; *Churchill* v. *Hunt,* 3 *Denio,* 321; *Sedgwick on Damages,* 311, 312, 314, 317, 318.) The word "molestation" adds nothing to the force of the bond. It does not mean a mere mental annoyance occasioned by a suit or attachment. Like the word damage, it refers to some actual pecuniary loss. Such is the construction it has always received in covenants for quiet enjoyment, where it usually occurs.

The circumstance that judgments have been recovered against the plaintiff on account of the default of his deputy, does not at all change the question. The sheriff became liable to the execution creditors the moment the deputy was in default, and he was no more than liable after the judgments were recovered against him. The only effect of the judgments was to change the onus of proof. They did not create the liability. If they were obtained upon due notice to the deputy and his sureties, they are conclusive evidence simply that the deputy

was in default, and of the amount of the sheriff's liability occasioned by such default. (*Per Bronson, J. in Aberdeen* v. *Blackmer*, 6 *Hill*, 324.)

GARDINER, J. delivered the opinion of the court. The principal question in this case is, whether the bond executed by Luce and his sureties is a mere bond of indemnity, requiring proof of actual damage, or whether it provides an indemnity against *the liability* of the sheriff on account of the acts done or omitted by his deputy.

The cases of *Rockfeller* v. *Donnelly*, (8 *Cowen*, 623,) and *Chase* v. *Hinman*, (8 *Wend.* 452,) have been relied upon, particularly the former, as decisive of this question. In the case first cited, the action was upon a bastardy bond, the condition of which was " to save, defend and keep harmless the overseers of the poor, and the inhabitants of the town, from and against *all charges*, damages and expenses, taxes, rates and assessments, for or by reason of the birth, education and maintenance of the child," then unborn. The two judges who delivered the prevailing opinion in the court of errors, agree that in its legal effect the instrument was a bond of indemnity against the *charge* to be created by the expected birth of a bastard child. (*Id.* 653.) The chancellor remarked, " the town was damnified by the 'charge' which was brought upon it by the birth of the bastard. The law imposes on the officers of the town the liability and duty of providing necessaries for the infant, and it was against this *legal obligation* that the defendants bound themselves to indemnify the plaintiff." Senator Spencer remarked that " the condition was broken the moment the child was born, for then it became a charge upon the town." (*Id.* 653.) The construction given by the learned judges therefore to the bond in that suit was that it provided for an indemnity against a *legal liability*. The case of *Chase* v. *Hinman*, (*supra*,) was an action on a bond, the condition of which was that the obligor should " save harmless and indemnify the obligee against all damages, costs and charges, to which he might in any way be subjected, or *become liable for*," &c. No money was paid; and it was held by the court that by the

instrument itself a distinction was obviously taken between damages actually sustained, and a *fixed legal liability* for such damages, and that the indemnity was against both.

The condition of the bond before us is as follows: "Now therefore, if the said Stephen Luce shall so demean himself in all matters touching his duty as such deputy sheriff, that the said sheriff shall not sustain any damage or molestation whatsoever, *by reason* of any act from this date done *or any liability incurred* by and through said deputy, then the obligation to be void." The distinction between the bond in question and those above mentioned, consists, I apprehend, in this, that by the former a "charge" or "fixed legal liability" is declared to be the injury from which the obligee is to be saved harmless. By the condition of the latter, the obligor stipulates that the sheriff shall not sustain any damage or molestation *by reason* of any liability, &c. By the former, he is to be saved from the thing specified. By the latter, from its consequences, or in other words, from the damage or molestation which may result from the liability.

The distinction is very important. It is recognized in the cases to which reference has been made, and in others, and will be found to pervade most of the authorities which have been cited. It is the distinction between an affirmative covenant for a specific thing, and one of indemnity against damage by reason of the non-performance of the thing specified. The object of both may be to save the covenantee from damages, but their legal consequences to the parties are essentially different. Thus, in *Kip* v. *Brigham*, (7 *John. Rep.* 168,) the condition of the bond was that the debtor "should remain a true and faithful prisoner and not escape; and that he should not at any time escape or go without the limits." The prisoner escaped, the very act to which the covenant applied, and it was held a breach, and the liability of the sheriff the measure of damages. The court, in 6 *John. Rep*, 159, say, it is true that the bond was *in effect* a bond of indemnity; but they nowhere intimate that the rights and remedy of the obligee in the two cases were identical. So in *Warwick* v. *Richardson*, (10 *Mees. & Welsby*, 284,) trust mo-

neys were left by the testator in the hands of a co trustee to be used in trade. The latter executed a bond, the condition of which was to *save,* defend, and keep harmless the obligee from all suits, claims and demands, &c. prosecuted or *made* against him. A decree was obtained by the cestuis que trust against the plaintiff's testator for the trust money. The court say that the obligor in order to save the obligee harmless from *this claim,* ought to have invested the trust moneys pursuant to the will. Not having done so, the proper amount of damages is the amount to which the claim subjected the obligee. The obligee was to be saved *from any claim.* This was the act to be done. Its non-performance was the breach, and the legal liability of the obligor the measure of damages. The cases of *Thomas* v. *Allen,* (1 *Hill,* 145,) and *Churchill* v. *Hunt,* (3 *Denio,* 321,) are to the same effect.

Justice Beardsley states the obvious truth in *Churchill* v. *Hunt,* that upon obligations of this sort, the right of action becomes complete on the defendant's failure to do the particular thing he agreed to perform. Non-damnificatus cannot be pleaded in such cases, although it may be where the condition is to acquit the plaintiff *of any damage by reason* of the particular thing. (1 *Saunders,* 116, *n.;* 1 *Hill,* 146.) It is believed that all the cases referred to by the learned judge of the supreme court whose opinion is before us, may be reconciled upon the principle above suggested. Here the defendant agreed that the plaintiff should not sustain any *damage,* which means actual damages, *by reason* of *any liability* incurred by the act of the deputy. The case is therefore within the principle stated in the note to Saunders.

The word molestation cannot enlarge the condition beyond what would be implied from the word damage. The former occurs frequently in covenants for quiet enjoyment, and against incumbrances. Nothing short of an eviction, or in the case of the latter covenant, the payment of money on account of the incumbrance, will entitle a party to recover, however much he may have been annoyed, troubled or molested. Indeed damage is much the most comprehensive word of the two ; molestation, if it has any legal meaning, being but a species of damage.

The plaintiff having failed to establish a breach of the condition of the bond, was not in strictness entitled to nominal damage. But as the error can work no injury to the parties, a new trial must be denied.

New trial denied.