## McGAY *a.* KEILBACK.

*New York Superior Court; Special Term, May,* 1861.

### SUBROGATION.—JUDGMENT-CREDITOR'S ACTION.

A person damnified by the acts of a wrongdoer has no right to be subrogated to an indemnity which the wrongdoer may have taken against liability arising from his wrongful act.

In a creditor's action against a judgment-debtor and his debtor, to reach securities held by the former, the plaintiff is in no better position than an assignee of the judgment-debtor.

A judgment-creditor cannot impeach a release by the debtor, of a mere contingent obligation.

Trial by the court.

This action was brought by James McGay against Franz Keilback and Robert Reid. Reid was one of the constables of the city of New York, and, under an execution issued out of one of the district courts of that city against the property of one

Linsheimer, seized certain personal property. The present plaintiff claimed the property, and Reid obtained from Keilback the ordinary indemnity bond and retained possession of the property. The present plaintiff commenced an action against Reid, to recover possession of the property, and procured its delivery to him, as a provisional remedy, under the Code, and finally obtained judgment for the possession, and for .$123.78 costs, on the 11th day of February, 1859, and issued execution for his costs, which was returned unsatisfied.

The complaint, in addition to these facts, set forth that Reid was insolvent since the 6th day of October, 1859; that about that time the plaintiff notified Keilback of the recovery of judgment against Reid, that he claimed the bond of indemnity, and that Keilback must pay the judgment against Reid. It also averred Keilback had failed to keep and save Reid harmless, as in the bond of indemnity covenanted, by omitting to pay the judgment against him. The complaint also averred that on the 18th of December, 1860, the defendant Keilback, combining and confederating, &c., had procured from Reid, for a trifling consideration, a release from the indemnity bond, which release was claimed to be invalid against the plaintiff.

The relief demanded was, that the plaintiff be subrogated to the rights of Reid upon the bond, as they existed prior to the release to the extent of his judgment against Reid; or that the release, be set aside as fraudulent, and that plaintiff be declared entitled to be paid the amount due to him on his judgment against Reid; and that a receiver of the indemnity bond collect the amount due, and pay plaintiff's judgment.

The answer of Keilback denied, among other things, all the allegations of collusion with Reid; and for a second defence, averred that the release was executed for a valuable consideration, and presented the same as a bar to the action. The case came on for trial on the pleadings and proofs.

*Nelson Smith*, for the plaintiff.

*Joseph E. Berry*, for the defendant Keilback.

ROBERTSON, J.—The plaintiff claims that he is entitled to make the defendant pay him the amount recovered by him in the judgment against Reid, the officer, upon two grounds:

*First*, That he is entitled to be subrogated to all the rights and remedies of Reid, under or upon the bond of indemnity of the defendant to him; and,

*Secondly*, That as a judgment-creditor of Reid, he is entitled to a judgment for the payment to him of the amount due to the latter.

The bond in question is strictly one of indemnity merely, against general damages only, by the doing by the obligee of the acts complained of; it is not one of indemnity against the costs and damages in any particular action, as in the case of Chase a. Hinman (8 *Wend.*, 452); nor does it provide absolutely for the performance of a specific act, or payment of any sum of money to third persons or the obligee, as in the cases of Gilbert a. Wyman (1 *N. Y.*, 550); Thomas a. Allen (1 *Hill*, 145); Churchill a. Hunt (3 *Den.*, 321). No notice of the suit against the indemnitee was given to the indemnitor, nor was the legality of the recovery of the judgment against the former established in this cause; the counsel who defended in such action was not retained to do so by the defendant in this, so that he was not in any way bound by the result therein.

There was no privity of contract between the plaintiff in this action and the defendant growing out of the bond in question, as there was none between the obligee and the plaintiff. The acts of the former, against the consequences of which he was to be indemnified, were to be hostile to the latter if they affected him at all; the relations of principal debtor to the plaintiff and surety could not arise between the obligor and obligee, so as to give the plaintiff any right of subrogation. Even if the right of waiver by the plaintiff of the trespass, and his election to sue the obligor for goods sold and delivered, could convert the bond in question into an obligation to guaranty the reimbursement of the price, no such election has been made, and the only recovery had was for costs in an action of claim and delivery of personal property.

The validity of the bond itself depended upon the ignorance of the obligee, that the acts for which he was to be indemnified would be trespasses; if he had known them to be so, he would have been a joint wrongdoer, and the contract would have been illegal. (Allaire a. Ouland, 2 *Johns. Ch.*, 54; Coventry a. Barton, 17 *Johns.*, 142; Stone a. Hooker, 9 *Cow.*, 154.) The instru-

ment, therefore, must be assumed to have been executed mainly to protect the obligee against the expenses of defending against unfounded claims; any damages arising from well-founded claims could only come in incidentally, as the accidental result of a well-intended effort to seize only property which really belonged to the judgment-debtor, otherwise it would be palpably an agreement to indemnify for committing torts. It would be an extraordinary result, therefore, from the application of any other principles of law, which should make an obligor in a bond of indemnity against the liability of the obligee for levying on property under an execution, liable directly to the party whose goods had been levied on; and that, too, not as a co-trespasser whose complicity was established by the bond (Herring *a.* Hoppock, 15 *N. Y.*, 409), but on a contract as having actually agreed with his fellow-wrongdoer, if he would commit the wrong, to pay the plaintiff his damages. If there ever existed any liability, equity, or privity of contract between the plaintiff and defendant, it must have arisen at the time of executing the bond, or, at least, when the acts were performed whose results were indemnified against; yet, can it be said that the obligee could not immediately have rescinded, cancelled, or discharged the bond without the plaintiff's assent?

If the views urged on behalf of the plaintiff be correct, he ought not to have been obliged to wait for a recovery against the obligee; he should have been entitled to compel an assignment of the bond to himself, the moment those acts were performed, against the liability of the obligee for which, he was indemnified by the bond. If the abhorrence of the law for unnecessary litigation entitled the plaintiff, at the beginning of this action, to an assignment of the bond and a recovery directly against the defendant in order to obviate the necessity of two actions, it did so when the levy was made; the damage was then done, the officer then became liable, and, upon a proper recovery by the plaintiff against him, and his satisfaction of such recovery, the defendant would have become liable to him. But therein consists the difference of the two liabilities,—the obligee was liable when he committed the tort; the defendant was not liable, until a proper recovery against and payment by the obligee; a mere liability by him was not enough. Such an action upon such a bond, by a person standing in the plaintiff's

position upon such a bond, is equally without precedent, with an action to compel the assignment of such a bond simply on the ground of the double and corresponding liability of the officer and his indemnitor. No authority has been furnished to warrant them, and no principle sustains them.

Even laying out of view the objection that the plaintiff seeks to procure an assignment of the bond, and recover for its breach in one action, without the intermediate step of appointing a receiver as an assignee by whom a suit might be brought upon the bond (Edmonston a. McCloud, 19 *Barb.*, 357), the action must fail as an equitable garnishee process against a debtor of a judgment-debtor. There is no evidence that the obligee ever acquired any right of action on the bond by paying any amount for which he was legally liable. (Gilbert a. Winan, 1 *N. Y.*, 550; Campbell a. Jones, 4 *Wend.*, 306; Scott a. Tyler, 14 *Barb.*, 202.) Nor is there even any evidence as against this defendant, that Reid was ever made legally liable for any damages. (Aberdeen a. Blackman, 6 *Hill*, 324; Crippin a. Thompson, 6 *Barb.*, 532; Stone a. Hooker, *supra*.) There was no proof of notice to the defendant to defend the action against Reid, or that he volunteered to defend it; and there was no proof to establish originally that Reid was liable in the action in which costs were recovered against him; the plaintiff, therefore, could not recover as Reid's assignee, and he is in no better position than any other assignee. The action cannot, therefore, be sustained as a proceeding by a judgment-creditor.

What has been said sufficiently disposes of this case, without reference to the question of the release by Reid to the defendant. If the defendant had actually become liable to Reid, and the latter executed the release with an intent on the part of both to defraud the plaintiff of his rights as judgment-creditor, to be acquired under a threatened supplementary proceeding or action on his part to reach such liability, the release would be void; but as his liability was still *in fieri*, and it was still a mere contingent obligation, Reid had a perfect right to rescind, cancel, or discharge it; a legal recovery against him with the privity of the defendant, or upon a legal necessity which could be established by the plaintiff, was essential to charge the defendant with a present debt: the recovery being indispensable, because the costs or damages were uncertain until liquidated

thereby. The release, therefore, was operative and valid, and discharged the defendant from any contingent liability; in law, it took the seal off the bond as if it had never existed. The notice, too, from the plaintiff, as to the time of whose delivery the evidence was contradictory, seems to have proceeded rather on the theory of an immediate liability of the defendant to the plaintiff, than on that of an equitable assignment in contemplation of law transferring to the plaintiff the liability of the defendant. The release, therefore, does not seem to have been executed contrary to any warning contained in such notice. Other testimony apparently establishes only an intent to relieve himself from future liability; this, of course, would not make it effectual, if the plaintiff was entitled to be subrogated to the rights of the obligee, which would make him already equitable assignee in law, and the defendant knew the facts which gave such right of subrogation. Whether there was sufficient evidence of an intent to defraud the plaintiff as a creditor of the obligee by such release, therefore, it is not necessary to decide in this case.

The complaint must therefore be dismissed, with costs to the defendant.