Earl, J.
What is called the report of the referee in this case is quite informal and incomplete. It does not contain separate findings of law and of fact, as required by the Code (§ 1022); and such findings as are contained therein are so commingled with what appears to be the opinion of the referee, that it is difficult in some respects to distinguish the one from the other. It was, therefore, within the power of the supreme court to set aside the report and the interlocutory judgment which was entered ex parte thereon. Whether it would set them aside, was a matter of practice resting in its discretion, with the exercise of which we can not interfere.
But the court went still further, and set aside the order of reference and all proceedings thereunder, and appointed a new referee to try the case de novo. There had been a long trial before the referee, his fees being $1,365 and the stenographer’s, $400, and the expense for counsel must have been considerable. All this expense was incurred by the defendant, and the court could not arbitrarily, without some reason sufficient in law, nullify all that had been done under the order of reference. The action was referred by consent to the referee named to determine all the issues of the action, and to take and state the account between the parties, and report the amount for which judgment should be entered in favor of either party against the other. There is no allegation of misconduct on the part of the referee. It is simply alleged that he committed some errors, and that he did not complete the reference by taking all the accounts and stating the balance, and ordering judgment for such balance. But he took all the evidence offered by either party. Both parties rested their case; both asked him to order an interlocutory *468 judgment, and both submitted their requests to find upon the law and the facts. As there was firm property in the hands of the receiver undisposed of, the case was not then.in condition for final judgment, and, so far as the facts now appear, was one eminently proper for an interlocutory judgment. Under the order of reference, the referee should go on so far as he can and take all the proof, which either party may offer with reference to the accounts, and settle all the accounts, so far as that is possible in the present condition of the affairs of the firm ; and after that, if there is property on hand yet to be disposed of, and which will thereafter have to be converted by the receiver and accounted for by him, such a judgment may be entered as the referee will be able to order; and a further accounting may be had in the future with reference to the balance of the assets. Under such circumstances, upon such allegations and facts as appear here, we know of no authority or power in the supreme, court arbitrarily to set aside the order of reference and all the proceedings thereunder, and appoint a new referee.
If the referee committed any errors of law or of fact, they cannot be corrected by a motion at special term of the court to set aside the order of reference and all proceedings thereunder, but the orderly method prescribed by law for correcting them is by appeal from the judgment entered upon his report.
After setting aside the report and the interlocutory judgment, the court'sliould have sent the case back to the referee, that he might complete the trial thereof, so far as he could go and so far as the parties desired him to go, and thus both parties would have the benefit of the trial and the large expenditure that had thus far been incurred.
The provision in the order that the evidence already taken may, by the consent of both parties, be read before the new referee, does not give the defendant all he is entitled to and secure all his substantial rights. The plaintiff may withhold his consent and then his evidence cannot be read, *469 and the new referee will not have the benefit of seeing and hearing the witnesses.
If the referee has, in fact, been guilty of any misconduct, or, if for any sufficient reason, he is an improper person to proceed with the trial, the facts should be made to appear, and then the court would have jurisdiction to vacate the order of reference and to appoint a new referee to proceed de novo.
The order of the general term, which affirmed the order of the special term, denying the defendant’s motion for the appointment of a referee to take and state the accounts, should, therefore, be affirmed without costs, and the other order of the general term and that affirmed by, it should be affirmed so far as they vacate and set aside the report of the referee and the interlocutory judgment, and in other respects reversed, so that the case may stand for further trial before the referee, without costs to either party.
All the judges concurred.
Note.—In Adams v. Symon (N. Y. Supreme Court, Referee; January, 1889,) it was held that the refusal of the court to transfer a cause from the equity to the common law calendar does not preclude a referee, to whom it is afterward referred to hear and determine the whole issues, from awarding a common law judgment, if that be consistent with the complaint and embraced within the issue.*
It was also held that a mortgagor who has been charged by judgment for deficiency can, without first paying the same, maintain an action directly against his grantee who by the deed assumed and agreed to pay the mortgage as a part of the consideration of the deed, and recover the amount of the deficiency.†
John Hunt Adams brought this action against Robert R. Symon on facts which may be briefly stated as follows :
Adams mortgaged certain real estate in New Jersey and thereafter *470 conveyed it to Symon by a deed declaring the premises to be subject to the mortgage which said Symon assumed and agreed to pay as a part of the consideration stated in the deed. Symon conveyed to a corporation, who also assumed the payment of the mortgage, subsequently, the holder of the mortgage foreclosed in New Jersey chancery in a suit in which-the corporation and Adams were parties, and judgment for deficiency was asked against Adams. Under the New Jersey statute, which authorizes stays on foreclosure, and judgment for deficiency in the same suit, decree was made accordingly and a sale had resulting in a deficiency of $61,605.23. Execution was issued on the deficiency decree against Adams and a suit brought also for the deficiency, in which an attachment was issued and levied on Adam’s property. In this situation of affairs Adams brought the present action to recover the deficiency from Symon.
Plaintiffs attorney placed the cause on the special term calendar and the Court refused to strike it off, when asked by defendant’s attorney, on the ground that the cause was properly triable by jury. Thereafter the issues were referred for trial.
Horace Russell and George M. Wright, for the plaintiff.—I. It was entirely proper to unite a demand for legal and equitable relief in the complaint, and, failing to make out a case entitling us to one, we are entitled to the other, if the facts will sustain it. The complaint is not to be dismissed except for failure to show that plaintiffs are not entitled to either form of relief (Hale v. Omaha Bank, 49 N. Y. 626 ; Thatcher v. Hope Cemetery Ass'n, 46 Hun, 594, 597 ; Marquat v. Marquat, 12 N. Y. 336 ; Barlow v. Scott, 24 Id. 40 ; People v. Met. Tel. Co., 11 Abb. N. C. 304 [S. T., Lawrence, J.]; Sternberger v. McGovern, 56 N. Y. 12; Porous Plaster Co. v. Seabury, 43 Hun, 611 ; Beck v. Allison, 56 N. Y. 366 ; Davis v. Morris, 36 Id. 569 ; New York Ice Co. v. Northwestern Ins. Co., 23 Id. 357 [1861]).
II. The mortgage, which defendant assumed and agreed to pay having been foreclosed, and the real estate mortgaged having been sold under the decree in foreclosure, and the deficiency having been ascertained, all the steps necessarily preliminary to plaintiffs’ right of recovery have been taken, and plaintiff is entitled to sue defendant for the amount of the deficiency, although he may not have paid the whole or any part of it himself (Wilbur v. Warren, 104 N. Y. 192, 197 [Andrews, J.]; Hume v. Hendrickson, 79 Id. 117, 127; Port v. Jackson, 17 Johns. 239 ; Id. 479, 482; Thomas v. Allen, 1 Hill, 145 ; Gilbert v. Wiman, 1 N. Y. 550; Rector v. Higgins, 48 Id. 532, 539; Belloni v. Freeborn, 63 Id. 383, 384 ; Thorp v. Keo *471 kuk Coal Co., 48 Id. 253; Campbell v. Smith, 71 Id. 28; Gifford v. Father Matthew Temperance Soc., 104 Id. 142; Churchill v. Hunt, 3 Den. 321; Smart v. Smart, 24 Hun, 127; Seligman v. Dudley, 14 Id. 186 ; Cady v. Allen, 22 Barb. 388; [aff’d on another point in 18 N. Y. 573] ; Rawson v. Copland, 2 Sandf. Ch. 251; Foster v. Atwater, 42 Conn. 245 ; Sparkman v. Gove, 44 N. J. L. 253 ; Furnas v. Durgin, 119 Mass. 500, 508 ; Locke v. Homer, 131 Id. 93 ; Hodgson v. Bell, 7 T. R. 97; Holmes v. Rhodes, 1 B. & P. 638; Penny v. Foy, 8 B. & C. 11 ; s. c., 2 Man. & Ryl. 181; Loosemore v. Radford, 9 M. & W. 657; Robinson v. Robinson, 24 L. T. R. (O. S.)112 ; In re Negus, 7 Wend. 499; Lathrop v. Atwood, 21 Conn. 116, 117; Redfield v. Haight, 27 Id. 31; Gage v. Lewis, 68 Ill. 604; Lethbridge v. Mytton, 2 B. & Ad. 772 ; Carr v. Roberts, 2 Nev. & Man. 42; s. c., 5 B. & Ad. 78; Hodgson v. Wood, 2 H. & C. 649; Stout v. Folger, 34 Iowa, 71; Wicker v. Hoppock, 6 Wall. 94; Smith v. Pond, 11 Gray, (Mass.) 234; Stephens v. Boulton, 23 U. C. Q. B. 16 [1863]; Leith v. Freeland, 24 Id. 132 [1864]; Snyder v. Summers, 1 Lea [Tenn.) 534; Gregory v. Hartley, 6 Neb. 356 ; Ashdown v. Ingamells, L. R. 5 Ex. Div. 280; Cornwallis v. Savery, 2 Burr. 772; Kohler v. Matlage, 72 N. Y. 259, 266; Juliand v. Burgott, 11 John. 477; Mann v. Eckford’s Exr’s, 15 Wend. 502; Exp. Negus, 7 Id. 499; Tyler v. Ives, MS. Sup. Court, 1839; Kip v. Brigham, 6 John. 158 ; s. c., 7 Id. 168 ; Webb v. Pond, 19 Wend. 423; Rockfeller v. Donnelly, 8 Cowen, 623; Chace v. Hinman, 8 Wend. 452 ; Pardee v. Treat, 82 N. Y. 385 ; Wilcox v. Campbell, 35 Hun, 254; aff’d 106 N. Y. 328; Conner v. Reeves, 103 Id. 527; Sinsheimer v. Tobias, 53 Super. Ct. (J. & S.) 508; Wright v. Whiting, 40 Barb 235 ; Wilson v. Stillwell, 9 Ohio St. 467; Colgrove v. Tallman, 67 N. Y. 95; Halsey v. Reed, 9 Paige, 445; Powell v. Smith, 8 John. 248; Slauson v. Watkins, 86 N. Y. 597; Ayers v. Dixon, 78 Id. 318; Vrooman v. Turner, 69 Id. 280; Mills v. Watson, 1 Sweeny, 374, G. T. Super. Ct. [1869], Barber, Fithian and Freedman, JJ.; Comstock v. Drohan, 71 N. Y. 9 ; Calvo v. Davies, 73 Id. 211; Burbank v. Gould, 15 Me. 118; Claflin v. Ostrom, 54 N. Y. 581; Burr v. Beers, 24 Id. 178; Thorp v. Keokuk Coal Co., 48 Id. 253 ; Garnsey v. Rogers, 47 Id. 233, 239 [2 Sutherland on Damages, 614]).
III. The mortgage having been foreclosed, and the land sold and the proceeds applied upon the indebtedness, and the amount of the deficiency ascertained, and judgment therefor having been entered against the plaintiff, Adams, and his property having been levied upon under attachments, he is entitled to a decree directing that defendant pay the amount due on the judgment to the holder thereof, within thirty days, *472 or, in default thereof, that plaintiff have judgment absolute against him (1 Story Eq. Jur. § 327 ; Burge on Suretyship, p. 377; Brandt on Suretyship, § 192; Bispham, Principles of Equity, § 888 ; Lord Thurlow in Nesbit v. Smith, 2 Brown Ch. Rep. 451; Marsh v. Pike, 1 Sandf. Ch. 210; Woodruff v. Erie R. R., 93 N. Y. 609, 626 ; Farnham v. Mallory, 5 Abb. Pr. N. S. 380 ; s. c., 3 Keyes, 527; 2 Abb. Ct. App. Dec. 100; Bennett v. Abrams, 41 Barb. 620 ; Cubberly v. Yager, 42 N. J. Eq. 279 ; s. c., 11 Atlantia. Rep. 113; Rubens v. Prindle, 44 Barb. 336 ; Cornell v. Prescott, 2 Id. 20; Miller v. Winchell, 70 N. Y. 437 ; Champion v. Brown, 6 John. Ch. 398, 405; Ranelaugh v. Hayes, 1 Vernon, 189 ; s. c., 2 Ch. Cases, 146 ; Lee v. Rook, Mosely, 318; Buxton v. Lister, 3 Atk. 383; Pember v. Mathers, 1 Bro. 52; Irick v. Black, 17 N. J. Eq. 189; D. L. & W. R. R. v. Oxford Iron Co., 38 N. J. Eq. 151; Wese v. Chaston, 12 Florida, 315; Washington v. Tait, 3 Humph. [Tenn.], 543 ; Whitridge v. Durkee, 4 Md. Ch. 442 ; Slauson v. Watkins, 76 N. Y. 597).
IV. Defendant’s claim that the plaintiff has been guilty of laches in not notifying him of the matters relating to the foreclosure suit, is untenable. He was not bound to notify him (Comstock v. Drohan, 71 N. Y. 9 ; aff’g 8 Hun, 373 ; Irick v. Black, 17 N. J. 189; Platt v. Platt, 58 N. Y. 646; affirming 2 T. & C. 25 ; Supervisors v. Otis, 62 N. Y. 88; Thayer v. King, 31 Hun, 437; Morris Canal Co. v. Van Vorst, 1 Zabriskie, (N. J.) 100; Pintard v. Davis, Id. 632; U. S. v. Howell, 4 Wash. C. C. 620).
V. In answer to objections to the regularity of the New Jersey judgment for deficiency we respectfully insist that the judgment is prima facie evidence of the facts established by it. This proposition is well settled (Comstock v. Drohan, 8 Hun, 373 ; affirmed, 71 N. Y. 9; Bridgeport Ins. Co. v. Wilson, 34 Id. 275, 281; Konitzky v. Meyer, 49 Id. 571; Pringle v. Woolworth, 90 Id. 502; Revision of New Jersey [1709-1877], p. 117, §. 74).
Thomas Thacher (Simpson, Thacher & Barnum, attorneys), for the defendant.
Hamilton Odell, Eeferee [after stating the facts.]—The defendant insists, in the first place, that no money judgment for damages can be rendered against him, because the plaintiff has heretofore elected to prosecute the action for equitable relief only. The facts are these : After issue was joined, the plaintiff placed the cause upoh the calendar of the special term for trial. Thereupon the defendant moved to *473 strike it from the calendar upon the ground that it is properly triable by “jury at a circuit term of this court.” This motion the plaintiff resisted, and it was denied, and afterwards, on the defendant’s written consent, an order was made referring it to me “to hear and determine the whole issues ‘ therein.’ ” My duty under the order seems to be plain. I am to hear and decide all the matters in controversy, and may award “ any judgment consistent with the case made by the complaint and embraced within the issue.” (Code, § 1207; Murtha v. Curley, 90 N. Y. 372, 377.) I do not see that the character of the action was at all changed, or that any right was waived by the plaintiff—or that his legal rights or remedies against the defendant were in any respect prejudiced or limited—by the proceeding at special term above referred to.
The defendant further insists that no cause of action against him for damages has been shown, because the plaintiff has not himself paid any portion of the judgment for deficiency. This objection presents the main question in the case.
A grantee of lands, subject to a mortgage which he assumes to pay is part of the consideration for the conveyance, becomes personally liable for the mortgage debt (Comstock v. Drohan, 71 N. Y. 9, 13; Hamill v. Gillespie, 48 Id. 556, 559). A bare assumption of a mortgage is equivalent to an express covenant to pay it—(Schley v. Fryer, 100 N. Y. 71)—although the deed may not be signed by the grantee (Thorp v. Keokuk Coal Co., 48 N. Y. 253, 256). And the mortgagee may enforce the grantee’s liability by an action at law upon the implied covenant, without first resorting to a foreclosure of the mortgage (Burr v. Beers, 24 N. Y. 178 ; Thorp v. Keokuk Coal Co., supra). It is settled that in case a grantee makes default in the payment of a mortgage, which he has agreed or assumed to pay, the grantor may maintain an action in equity to compel him to perform his contract (Rubens v. Prindle, 44 Barb. 336, 345; Marsh v. Pike, 10 Paige, 595; Cubberly v. Yager, 42 N. J. Eq. 279). Whether, in such case, he may pursue the grantee at law, by an action for damages for breach of covenant, must depend upon the nature of that covenant and of the duty, and consequent liability, to the grantor thereby incurred by the grantee.
The cases recognize a broad distinction between a mere covenant of indemnity, or a covenant which indemnifies against loss or damage, and one which indemnifies against liability or claim. Port v. Jackson, 17 Johns. 239, is a leading case and illustrates the distinction. Port was the grantee of a term of years and liable to his grantor for the reserved rent. He assigned the term to Jackson who, in consideration *474 thereof, covenanted, among other things, to keep and perform all the “ covenants, conditions, provisos, payments and agreements,” imposed upon Port by the terms of the indenture of demise to him. The declaration alleged that Jackson had failed to perform his covenant to pay the rent which had become due from Port to Barlow (Port’s grantor), and that on March 25, 1818, the sum of 882 pounds one shilling and three pence was in arrear and unpaid to the said Barlow. It was objected that the declaration was insufficient, because it contained no allegation that the plaintiff had paid the rent in arrear or been demnified by the breach of the defendant’s covenant. The supreme court said : “It is argued, on the part of the defendant, that until the plaintiff has paid the rent he cannot maintain an action at all or, in other words, that the covenant is not broken until the plaintiff has satisfied the rent. This is a mistake. The covenant is that the defendant shall pay the rent to the lessor as it falls due, and the moment the day of payment is passed and the rent is left unpaid the covenant is broken, as well according to its words as its spirit, and the action is, at all events, maintainable.”
The court further'held that the measure of plaintiff’s damages was the amount of the rent due. Van Ness, J., said : “The covenant is not that the defendant shall indemnify the plaintiff against his own covenant in the lease, or against any damage which he may sustain, but it is express and positive that the defendant will pay the rent for which the plaintiff continued to be liable, notwithstanding the assignment ; the sum to be paid is certain and liquidated, and the breach of the convenant consists in the non-payment of it, and a' plea of non damnificatus would, therefore, be no answer to the declaration. The contract between the parties amounts to a convenant, on the part of the defendant, to pay a present debt of the plaintiff, which would become payable, from time to time, to Barlow, the lessor; and it would be against all reason and justice to permit the defendant to say that the plaintiff shall himself first pay and advance the money before his right of action against the defendant to recover it arises.” The case received a unanimous affirmance in the court of errors (17 Johns. 479), where the chancellor said: “ He ” [the defendant] “ covenants to keep and perform all the covenants which Port had made to Barlow, and which, on the part of Port, were to.be “paid, done and performed,” and one of these convenants was to pay the rent. Jackson’s covenant was, therefore, not a mere covenant of indemnity. It was in substance and effect, that he would pay that rent for Port, and the averment is that he has not paid the rent, and that it is in arrear and due. The breach, if not in the very words of the covenant, is according to its sense and meaning, and such an assignment has always been held *475 sufficient. Where a defendant'has undertaken to do an act in discharge of the plaintiff from such a bond or covenant, he must show, especially, matter of performance, and this Jackson ought to have shown in this case; but where the defendant has undertaken to acquit and discharge the plaintiff from arty damages by reason of his bond or covenant, he then merely undertakes to indemnify and save harmless, and the plaintiff is then bound to show his damages. . . In my humble opinion we should pervert the plain sense and language of. the covenant entered into by Jackson if we should turn it into a mere covenant to indemnify Port, when it was evidently a covenant to pay the rent for, and instead of Port. Port was not bound to go and pay the rent, or have it recovered from him by due course of law, before he could resort to Jackson. He was not bound to subject himself to such previous distress or inconvenience. Jackson had undertaken to keep his covenant for him, that is, to go and pay the rent as it from time to time became due. ... I cannot raise a doubt in my mind, as to the construction of the covenant.”
The doctrine of Port v. Jackson has never been denied or questioned, in the courts of this State, but has been approved and followed in a multitude of cases. Rector, etc. v. Higgins, 48 N. Y. 532, was an action by lessor against lessee upon a covenant in the lease whereby the lessee agreed “to bear, pay and discharge” all taxes and assessments that should be imposed upon the demised premises during the term. Two assessments, for about §5,000, were laid upon said premises. These the lessee neglected to pay. They were not paid by the lessor, and it did not appear that any proceedings had been taken by the city to enforce collection. The action was brought upon the lessee’s covenant, and at the trial a verdict was directed for the plaintiffs. The general term reversed this ruling (4 Robt. 1, 372), holding that, as the plaintiffs had paid nothing, they had sustained no injury and could recover only nominal damages. But the court of appeals sustained the trial judge, and held that the plaintiffs were entitled to judgment for the whole amount of the assessments, saying that “ the distinction between a covenant or promise, whereby the defendant makes the amount to be paid his own debt, and one simply of indemnity whereby the covenant or promise is not broken until the amount has been paid by the plaintiff, pervades all the cases upon this subject, from the case of Jackson v. Port, 17 Johns. 479, when the rule became somewhat settled and defined, until that of Gilbert v. Wiman, 1 N. Y. 550.” This distinction, it is said, in the latter case, is ‘‘ very important. It is the distinction between an affirmative covenant for a specific thing and one of indemnity against damage by reason of the thing specified. *476 The object of both may be to save the covenantee from damages, but their legal consequences to the parties are essentially different.”
Belloni v. Freeborn, 63 N. Y. 383, was an action on a bond given by the defendants, wherein they covenanted that one William H. Buck-man should pay the rent of certain premises (for which rent Buckman and the plaintiff were jointly liable), and should hold the plaintiff “harmless from any and every liability for or on account of the rent of the said premises for the year commencing May 1, 1872, and ending May 1, 1873.” The rent was not paid by Buckman and Belloni sued defendants upon their bond. The court held that he was entitled to recover the full amount for which he was liable under the lease, although he had not paid the same. “ Had this bond,” Judge Allen says, “ been conditioned solely to indemnify and save harmless from damages, by reason of the liability, the obligee, the recovery would necessarily have been limited to the actual damages sustained by Mm. He could only have recovered to the amount of actual damnification. When the bond is, as in this case, conditioned as well to pay the debt or sum specified, as to indemnify and save harmless the obligee against his liability to pay the same, the obligee may recover the entire debt or demand upon default in the payment, without having paid anything. Non damnifleatus would have been no answer to the present action.”
So, in Kohler v. Matlage, 72 N. Y. 259, 266, Ohukch, Oh. J., says: “ It is settled that upon an obligation to do a particular thing, or to pay a debt for which the covenantee is liable or to indemnify against liability, the right of action is complete on the defendant’s failure to do the particular thing he agreed to perform, or to pay the debt or discharge the liability. The distinction is clearly defined between such an obligation and an indemnity against loss or damage by reason of a liability. In the former case the covenantee is to be saved from the thing specified ; and in the latter, from the consequences of it. In both cases courts seek to carry out the contract as made by the parties.”
Many other cases holding the same doctrine have been cited by the learned counsel for the plaintiff Thomas v. Allen, 1 Hill, 145; Churchill v. Hunt, 3 Denio, 321; Cady v. Allen, 22 Barb. 388; Seligman v. Dudley, 14 Hun, 186 ; Smart v. Smart, 24 Hun, 127; Wicker v. Hoppock, 6 Wall. 94 ; and others). In some of them the facts were substantially like those presented by the case at bar. In Sparkman v. Gove, 44 N. J. Law, 252, lands were conveyed “subject to certain mortgages now liens, etc., which mortgages are assumed by the party of the second part.” In Foster v. Atwater, 42 Conn. 245, the language was: “Said premises are conveyed subject to $1,900 mortgages, which, with accrued interest, the grantee assumes and agrees to pay *477 and save mo harmless from the same.” In Furnas v. Durgin, 119 Mass. 508—“ subject to mortgages amounting to $6,500, which the grantee hereby assumes and agrees to pay.” In Locke v. Horner, 131 Mass. 93—“ except a mortgage to Margaret Aitkin of $4,000, which the grantee assumes and agrees to hold the grantors harmless from.” In each of these cases it was expressly held that the grantee’s undertaking was not a mere undertaking of indemnity, but an absolute engagement to pay the mortgage debt, and that upon his default the grantor could sue for a breach of the covenant and recover the full amount of the debt, although he might not have paid the same. So in Hume v. Hendrickson, 79 N. Y. 117, plaintiff was the lessee of premises on which he erected a building, with money borrowed from his lessor and secured by a mortgage upon the leasehold interest. He sublet the premises to one Clark (defendant’s testator) for a long term of years, Clark covenanting “ to assume, pay off and discharge ” said mortgage. Soon afterwards Clark assigned his sub-lease ; he did not pay the mortgage ; foreclosure proceedings were commenced; plaintiff paid off the mortgage, then sold his interest in the building to his lessor for a large sum and took a new lease of the premises. The suit was against Clark’s estate for a breach of his covenant to pay the mortgage. The court (Daneorth, J.), said: “The undertaking on the part of Clark, absolute in the first instance, was not subsequently cut down or qualified. His liability was not for such deficiency as might remain due after the mortgaged premises had been sold and the proceeds applied upon the mortgage, but for the payment of the whole. Nor was it to save Hume harmless ; if that had been its purpose, very different language would have been employed ; but to pay the mortgage—and Hume’s right' of action was complete and perfect the moment the mortgage became due and remained unpaid.”
In Sparkman v. Gove, supra, the supreme court of New Jersey says: “ On the breach of such a covenant, the damages recoverable area sum sufficient to put the plaintiff in the position in which he would have stood if the covenant had been kept, that is, one of complete exoneration from the obligation which the defendant had agreed to discharge. Such sum is the whole amount of the plaintiff’s debt. The authorities to this effect are clear and weighty. They distinguish between cases growing out of the mere liability of the plaintiff as surety for the defendant, or mere contracts to indemnify, on the one side, and cases resting upon the express agreement of the defendant with the plaintiff to pay a debt for which the plaintiff or his property is bound. In the former class, payment by the surety, or actual loss, must precede recovery ; in the latter, the nromisee, on breach, may recover the amount of the debt.” *478 It is conceded by plaintiff’s counsel that, as between grantor and. grantee, the land is the primary fund for the payment of the mortgage, debt. This is so, although the deed in addition contains a covenant on the part of the grantee to pay the mortgage. Wilbur v. Warren, 104 N. Y. 192, Judge Andbews says that: “The essential purpose of such a, covenant is to indemnify the mortgagor against the contingency that the land may not bring enough to pay the mortgage debt, and thereby leave him exposed to a'claim for a deficiency.” I understand that to mean an indemnity against a liability, and not against loss or damage resulting therefrom. In the present case, the land has been sold and the deficiency has been ascertained, and it does not require, therefore, the application of the .extreme doctrine declared in the authorities above referred to.
It is insisted by the learned counsel for the defendant that the case of Ayers v. Dixon, 78 N. Y. 318, is conclusive in favor of his contention that, in an action upon a grantee’s covenant to assume and pay a mortgage, the grantor can recover only actual damages, that is, such sum as he has been compelled to pay by reason of the grantee’s default. Ayers was the owner of lands in South Carolina, upon which there was a mortgage for $4,000. He contracted to sell an undivided one-half thereof to Dixon for $6,000, which Dixon agreed “to pay and deliver,” as follows: “ Three thousand dollars at the time of the delivery of the deed of the said premises, and an agreement by Dixon to assume and pay three-fourths of the Head mortgage, with interest.” In the deed to Dixon, the consideration was expressed to be “ the sum of six thousand dollars, of' which amount three thousand dollars is paid in cash, and the balance by Dixon assuming to pay three-fourths of the mortgage,” above described. . Ayers died. The plaintiff was appointed his administratrix. The mortgage fell due. No part of it was paid by either Ayers or Dixon. It was foreclosed, and the premises were sold for an amount exceeding the amount of the mortgage debt. The administratrix then sued to recover ^the $3,000, the share of the mortgage which Dixon had agreed but failed to pay. “ The plaintiff assumes,” Judge Danfobth sa,ys, “ that $3,000 of the consideration was unpaid, and for its recovery this action was brought.” It was held "that the action could not be maintained for two reasons—because the agreed consideration for the conveyance had been fully performed by Dixon, and because Ayers, the grantor, died before any action accrued against the defendants, and the promises in question descended to his heirs, who were the parties injured by the breach of the defendant’s covenant. The decision was that the particular cause of action, which the plaintiff sought to enforce, did not exist, and that Dixon’s liability, whatever it might be, was not to the *479 plaintiff but to other parties. It went no further. It is not at variance with Port e. Jackson, and kindred cases. It does not overrule or in anywise disturb them. Indeed, those cases are cited by the same learned judge in Hume v. Hendrickson, 79 N. Y. 117, in support of the proposition (quoted above), that Hume’s right of action upon Clark’s covenant to assume and pay “ was complete and perfect the moment the mortgage became due and remained unpaid.”
It is my opinion that, upon the authorities, the plaintiff is entitled to recover, and that the measure of his damages is the amount for which he is still liable on account of the bond and mortage.
The objection has been frequently made that, by allowing the covenantee to recover in an action of this character the covenantor is exposed to the possibility of being compelled to pay his debt a second time, as his liability on the original obligation can be enforced against him. Lord Campbell answered the objection in Robinson v. Robinson, 24 L. T. R. (O. S.) 112, and said that that possibility or peril arose from the covenantor’s default in not performing his covenant. In Rector, etc. v. Higgins, the court of appeals said that the objection was not substantial, and in Sparkman v. Gove it was said, as follows, “Although this rule may occasionally expose the promissor to some damage of being twice compelled to pay the same debt, yet the risk can always be escaped by exact performance of his contract, and whore he is in default, the instances will be rare in which the court rendering judgment against him will not protect him from loss, and even in those instances a timely resort to equity will afford him relief.”
The plaintiff should have judgment for $61,605.23 and interest.

See note on the mode of trial in 21 Abb. N. C. 287.

 That he cannot do so until after deficiency has been ascertained by judgment, see Slauson v. Watkins, 86 N. Y. 597; confirming, 44 Super. Ct. (J. & S.) 73; which rev’d 2 Abb. N. C. 366, note