## CONNER *v.* BEAN.

In the case of a bond to a sheriff to save him harmless from the consequences of attaching certain goods, and to pay all such sums as he shall be compelled to pay on that account, a judgment against the officer for the value of the goods, without any payment thereon and without any other expense or damage being incurred, constitutes no breach of condition.

DEBT on a bond of indemnity. Plea, the general issue and *non damnificatus.*

In December, 1852, one Albert S. Conner was in trade in Chicopee, Mass., and the defendant, A. H. Bean, having a note against him for $125.61, dated January 14, 1852, payable on six months, December 9, 1852, sued Conner in the court of common pleas on said note, returnable on the second Tuesday of March, 1853. The writ was placed in the hands of Sylvester Churchill, a deputy sheriff, for service, who, on the tenth day of December, 1852, attached a stock of goods in the possession of Conner, on said writ. December 20, 1852, H. G. Conner, claiming to be the owner of said stock of goods so attached, brought an action against said Churchill for taking said goods on Bean's writ against A. S. Conner. The suit against Churchill in favor of H. G. Conner was prosecuted to final judgment, which was rendered in favor of H. G. Conner, against Churchill, for $897.99 debt, and $93.21 costs, and execution was issued thereon, March 11, 1857.

December 16, 1852, Bean gave to Churchill the bond mentioned in the plaintiff's declaration, to indemnify him for making the attachment in the suit of Bean v. A. S. Conner, the condition of which is as follows:

"Whereas the above bounden A. H. Bean, on the ninth day of said December, sued out of the court of common pleas for said county of Hampden, a writ against one Albert S. Conner, and whereas the said Churchill, as a deputy of the sheriff of said county of Hampden, by virtue of said writ, attached as the property of said A. S. Conner, a stock of goods in the store occupied by the said A. S. Conner, at said Chicopee; and whereas the goods attached and held by said Churchill are claimed by one H. G. Conner as his property, and as not being the property of the said A. S. Conner; now, therefore, if the said Aaron H. Bean above bounden, his executors, administrators, or heirs shall save the said Churchill harmless from all damages, costs and expenses which he shall incur, and shall well and truly pay to him, and his executors, administrators and assigns, all money which he or they, or either of them, shall be compelled to pay by reason of having attached the said goods as the property of the above named A. S. Conner, to the said H. G. Conner, or his representatives, then this obligation shall be void, otherwise in full force."

Churchill died on the second day of September, 1858, and on the first day of February, 1859, W. H. H. Conner was duly appointed administrator of the estate of Churchill in Massachusetts, and on the 26th of November, 1859, he was also appointed administrator in New-Hampshire, and still holds that trust.

The estate of Churchill was insolvent, and Churchill was not compelled to pay and never did pay any thing on account of said attachment for which said bond was given as an indemnity, nor has said administrator been compelled to pay, nor in fact has he paid any thing on account of said attachment, nor has Churchill or said administrator suffered any actual damage thereby.

*Morrison & Stanley*, for the plaintiff.

1. The rendition of the judgment in favor of H. G. Conner against Churchill and the issuing of the execution thereon, was a breach of the condition of the bond; Churchill was thereby subjected to a fixed legal liability to the amount of that judgment, and it is no answer to this action that Churchill's estate is insolvent, or that nothing has in fact yet been paid on account of the attachment. *Fish* v. *Dana*, 10 Mass. 46; *Lyman* v. *Lull*, 4 N. H. 495.

In these cases nothing had in fact been paid. The condition of this bond consists of two parts. The first is to "save said Churchill harmless from all damages, costs, and expenses which he shall incur." The other to "pay all money, &c." " To incur" is to become liable to, and this clause is an indemnity against any liability for costs and damages, while the other is an indemnity against actual damages; and where the indemnity is against the liability for damages, the right of action of the obligee is complete when he becomes legally liable for them. *Chase*, Adm'r, v. *Hinman*, 8 Wend. 452; *Rockefeller* v. *Donnelly*, 8 Cow. 628.

2. But the bond in this case, like a probate bond or a bond in replevin, must be regarded as given for the benefit and security of the owner of the property attached. This action is brought by H. G. Conner in the name of Churchill's administrator for his benefit, and he may well maintain it for the recovery of the damages occasioned by the act of the defendant in causing Churchill to seize upon his property in the action against A. S. Conner. *Sumner* v. *Stewart*, 2 N. H. 39; *Whittemore* v. *Jones*, 5 N. H. 362.

The case shows that H. G. Conner has been damaged to the amount of nine hundred dollars by the defendant's attachment of the property, while the defendant's claim against A. S. Conner was less than one hundred and fifty dollars. Shall Bean be permitted to avoid liability by saying that he merely indemnified the agent that he employed to do the act, and that agent being irresponsible, and having died insolvent, H. G. Conner must lose his property, and he be allowed to retain the avails of it, without right, solely because of the irresponsibility of Churchill?

*S. N. Bell*, for the defendant.

The bond in this case is one of indemnity; the condition is to save harmless from all damages, &c.

"It is well settled that a mere liability to pay is not a breach of the condition to save harmless; but a liability attended with any inconvenience to the obligee is a damage which is within the meaning of the condition." *Lyman* v. *Lull*, 4 N. H. 496; *Rosse* v. *Pye*, Yelv. 207; *Broughton's Case*, 5 Coke 24; *Fish* v. *Dana*, 10 Mass. 46; Com.

Dig., Condition, I; 1 Roll. Ab. 432; Cro. Eliz. 672; *Morris* v. *Lutterel*, 1 Vent. 261; *Freeman* v. *Shaw*, Cro. Jac. 339.

There was nothing here but a mere liability to pay even after the rendition of the judgment, and it was not attended by any inconvenience or damages. The case finds that neither Churchill nor his administrator suffered any actual damage, and under the plea of *non damnificatus*, actual damage must be shown. *Chase* v. *Hinman*, 8 Wend. 452; *Tufts* v. *Hays*, 31 N. H. 138; *Culler* v. *Southern*, 1 Saund. 117, and note; *Hulland* v. *Malkin*, 2 Willes; *Douglass* v. *Clark*, 14 Johns. 177.

This bond has no resemblance to a replevin bond or to a probate bond, which are required by statute and are kept in the custody of the court where the replevin suit is instituted or in the probate court, and are expressly given as security for all persons who are interested. *Sumner* v. *Stewart*, 2 N. H. 39; *Whittemore* v. *Jones*, 5 N. H. 362. This was a bond given for the security of the officer making the attachment, and one which it was his option to take or proceed without. The validity of the proceedings in no way depended on the taking of the bond. This was entirely collateral. After it had been taken, Churchill might have discharged it without affecting any person's rights but his own. It is said this suit is brought by H. G. Conner in Churchill's name for the benefit of H. G. Conner. If that be so it does not change the requirements of the law in regard to suits on a bond of indemnity. It seems that H. G. Conner's claim, if any thing, is against Churchill, for his unlawful acts in taking his property, and Churchill's liability is the same as that of any other person who had improperly interfered with Conner's property. The fact that he was a deputy sheriff, or that he was indemnified against the consequences of his acts, does not change the rights or liabilities of either party.

If it be claimed that Churchill was acting merely as the agent of Bean in making the attachment and in this conversion of the property, and that Bean is liable for his acts, then the action should have been against Bean for such unlawful acts and not on this bond.

BELLOWS, J. The material facts in this case are that Churchill, a deputy sheriff, attached a stock of goods as the property of A. S. Conner, upon a writ against him in favor of Bean, the defendant; and the goods being claimed by H. G. Conner, the defendant gave Churchill his bond, with the condition to "save Churchill harmless from all damages, costs, and expenses which he shall incur," and to pay all money he shall be compelled to pay by reason of having attached the goods. Afterward a suit was brought by H. G. Conner against the said Churchill for taking these goods, in which H. G. Conner recovered judgment, and on which execution was issued March 11, 1857; but nothing was ever paid by Churchill, who died insolvent, September 2, 1858, nor by his administrator, this plaintiff, on account of the attachment in question; nor has said Churchill or his administrator suffered any actual damage thereby.

Whether the general plea of *non damnificatus* is sufficient, there being in addition to the obligation to save harmless a stipulation to

pay whatever said Churchill should be compelled to pay, is not necessary now to inquire, as the form in which the case is presented is apparently designed to raise the substantial question, whether, under the circumstances, an action can be maintained without showing payment of the judgment, or other actual damage.

The bond, in this case is one of indemnity against loss or damage incurred by reason of the attachment, and nothing was to be done by the defendant until such loss or damage happened. It is true there is a stipulation for the re-payment of money, but that is only when the obligee had been compelled to pay it; leaving it still a contract of indemnity. *Tufts* v. *Hayes*, 31 N. H. 139; *Douglass* v. *Clark*, 14 Johns. 177.

The question, then is, whether, by the rendition of judgment against the obligee, without payment, or other injury, he must be deemed to have incurred " damages, costs, and expenses." Upon this point there is some conflict in the adjudged cases; some holding that the obligee is damnified immediately on the rendition of a judgment against him and before payment, and that thereby there is a breach of condition. Among this class of cases are *Peck* v. *Ambler*, Cro. Car. 349; *Brush* v. *Ridgeley*, Cro. Eliz. 264; *Watmough* v. *Francis*, 7 Barr 206; *Carman* v. *Noble*, 9 Barr 366; *Bellevue* v. *Wallace*, 2 Rich. (S. C.) 80. In the case of *Brush* v. *Ridgeley*, Cro. Eliz. 264, although the plaintiff had paid nothing, the court held that he was damnified by the judgment, as his body, goods, and lands were liable to be taken in execution, thus creating an incumbrance upon his lands and embarrassing the sale of them. *Peck* v. *Ambler*, Cro. Car. 349, was assumpsit on a promise that the plaintiff should enjoy certain lands in possession, and that the defendant would save him harmless from any action for the lands; and it appearing on the pleadings that the plaintiff had been ousted, and a judgment in ejectment against him, the court held that he was damnified by the judgment, being subject to execution and in danger of being charged.

In this case the plaintiff was clearly damnified by being dispossessed of his lands, and by the fear of arrest, which was alleged but not answered; in the other case of *Brush* v. *Ridgeley*, by erecting an incumbrance upon his land, which was the incidental, but not necessary effect of the judgment.

There is another class of cases where it is assumed, in the absence of proof to the contrary, that damage must have been caused by the bringing a suit and prosecuting it to final judgment. In *Pond* v. *Warner*, 2 Vt. 532, in a suit on a bond to indemnify a surety, brought by his administrator, it was held that the allowance by the commissioners of a large claim against the estate which was reported and registered among the claims, was a damnification, upon the ground that it must have occasioned some expense to the estate; at the same time it was held that a suit on a bond to save harmless the obligee, could not be maintained until he had sustained actual damage. The case of *Fish* v. *Dana*, 10 Mass. 46, is an authority for the plaintiff, but the very brief opinion of the court does not disclose the grounds upon which it proceeded, and it may be that

the court assumed, as in *Pond* v. *Warner*, that the suit must have caused the plaintiff some expense. In *Hoit* v. *Holcomb*, 32 N. H. 185, some suggestions are made in the direction of the plaintiff's views, but no opinion was given upon the subject. Of a somewhat similar character is *Rockefeller* v. *Donnelly*, 8 Cow. 623, decided in the court of errors, reversing the judgment of the superior court reported in 4 Cow. 253–260. It was a suit on a bastardy bond to the overseers of the poor of Clermont, to save that town harmless from the support of an illegitimate child of which Donnelly was the reputed father. At the trial the order of filiation and maintenance was introduced, by which it appeared that Donnelly was directed to pay the town toward the support of the child, fifty-six cents per week; and for some weeks it was paid by him, and after that he neglected it; and the court held that it is sufficient to show that the town had become damaged by the contract of the defendant, and his neglect to pay, without showing actual payment by the town, saying: " The law will intend that the overseers have in fact borne the charge until the contrary is shown. The right of action results therefore from the actual proof, or legal presumption, that the plaintiffs have borne the charge of the bastard child; and the weekly allowance directed by the order of bastardy, gives the measure of damages." So far the necessity of showing actual damages, in cases of indemnity bonds, is fully recognized; but the learned Chancellor *Jones*, who delivers the opinion, is inclined to think that it would be just and reasonable that when the amount to be paid is reduced to a certainty, it should be enforced in advance of the payment by its obligee, and thus avoid circuity; a proposition which is supported by *Sutherland*, J., in *Chase* v. *Hinman*, 8 Wend. 457, to carry the doctrine farther than is warranted by the authorities.

There are other cases where the conditions of the bonds by undersheriffs or jailers to the sheriff, are for the faithful performance of official duties, and to save harmless the obligees also. In these, a failure to perform such duties is a breach, and a suit may be maintained by a sheriff before he has sustained actual damage. Such is *Cooper* v. *Mowry*, 12 Mass. 7. In that case judgment was upon the bond for the penalty, to stand as security for future damages. So is *McClure* v. *Erwin*, 3 Cow. 313; *Andrus* v. *Waring*, 20 Johns. 153; and *Rowan* v. *Carr*, 5 Johns. 42, where it is held that without any payment by the sheriff he is entitled to judgment for nominal damages, to stand as security for future damages.

On the other hand it is held by a preponderating weight of authority that when the condition of a bond is simply to save the obligee harmless from a debt or liability, it is not broken until the obligee has been compelled to pay or has been otherwise damnified; but if the condition be to pay the debt or discharge the liability at maturity, then if not paid or discharged, the condition is broken. In *Jackson* v. *Post*, 17 Johns. 479, which was on a covenant to pay certain rent for which the plaintiff stood bound, it was held that the neglect to pay it was a breach of the covenant, and that the plaintiff might sue before paying the rent himself.

Chancellor *Kent* states the doctrine in these words: "When a defendant has undertaken to do an act in discharge of the plaintiff, from such a bond or covenant, he must show, specially, matter of performance; but when the defendant has undertaken to acquit and discharge the plaintiff from any damages by reason of his bond or covenant, he then merely undertakes to indemnify and save harmless, and the plaintiff is then bound to show his damages"; and this he says is a well settled distinction. So in *Harris* v. *Pitt*, Carth. 374, and 5 Mod. 243. The same doctrine is recognized in the matter of *Negres*, 7 Wend. 799. The court say, where indemnity alone is expressed, it has always been held that damage must be sustained, before a recovery can be had; but if there is a positive agreement to do the act which is to prevent damage to the plaintiff, then an action will lie, if the defendant neglects and refuses to do the act. So is *Gilbert* v. *Wiman*, 1 Comst. 550, where it is held that a judgment against the obligee is not sufficient, but it must be paid. So when the indemnity was for becoming bail, it was held that the suit could not be brought till the bail had been compelled to pay the money. *Reynolds* v. *Magoun*, 2 Ire. 26; 5 U. S. Dig. 142, sec. 19. The same doctrine is recognized in *St. Albans* v. *Curtis*, 1 Chip. 164; 2 U. S. Dig. 8, 9; and in *Chase* v. *Hinman*, 8 Wend. 452, where the court distinguishes between an indemnity against actual damages and expenses and the liability for them; and the case turns upon that distinction, although the general doctrine is fully recognized. See, also, *Cuppin* v. *Thompson*, 6 Barb. 532.

In *The Town of Lyman* v. *Lull*, 4 N. H. 495, *Richardson*, C. J., lays it down as well settled, that a mere liability to pay is not a breach of the condition of a bond to save harmless; but a liability attended with any inconvenience to the obligee, is a damage within the meaning of the condition. This inconvenience must, however, be such as the law will compensate in damages; as for instance, terror of suit, so that the obligee does not dare to go about his business, as is stated in *Broughton's Case*, 5 Co. 24. The doctrine of *Lyman* v. *Lull*, is also recognized in *Cummings* v. *Norton*, 35 Maine 308, where it is held that some injury must be shown to constitute a breach of condition. See, also, *Boynton* v. *Dalrymple*, 16 Pick. 147.

The distinction which has been stated, also determines when the plea of *non damnificatus* is appropriate, making it so in general, when the bond is merely one of indemnity; but otherwise, if it be to do any particular act or thing. 3 Ch. Pl. 983, notes (g), (h), and (i); 1 Saund. 116, n. 1, and cases cited. It therefore can not be pleaded, when the condition is to discharge or acquit the plaintiff from such a bond, or other particular thing, for then the defendant must set forth affirmatively the special manner of performance. When the plea of *non damnificatus* is properly pleaded and there is any damage, the plaintiff must repay it. 1 Saund. 416, note 1, and cases; *Coombs* v. *Newton*, 4 Blackf. 120: 1 B. & P. 638–640, note; *Andrus* v. *Waring*, 20 Johns. 153.

In accordance with these views is the doctrine in respect to the implied promise of indemnity of the surety by the principal. In

that case no suit can be brought until the surety has been damnified; and if a note or demand has been given as indemnity, only what has been paid can be recovered, although it is held that a suit may at once be brought and nominal damages recovered before the surety has paid any thing. *Haseltine* v. *Shedd*, 11 N. H. 390; *Osgood* v. *Osgood*, 39 N. H. 209. So in respect to covenants against incumbrances; while contingent only nominal damages can be recovered, although as the covenant is broken in case an incumbrance exists, a suit may be sustained for nominal damages without its being first extinguished. *Wilson* v. *Wilson*, 25 N. H. 229–235; *Brooks* v. *Moody*, 20 Pick. 474; *Delavergin* v. *Norris*, 7 Johns 358. The reasons assigned in *Brooks* v. *Moody*, by *Shaw*, C. J., are, because the covenantee may never be disturbed by the outstanding incumbrance, as it may be removed by some other party, or because the covenantor after the judgment might still be called upon by the holder of the mortgage on his personal obligation. So is *Prescott* v. *Truman*, 4 Mass. 627, *Parsons*, C. J.; *Osgood* v. *Osgood*, 39 N. H. 209.

These cases, although in the form of the contract somewhat unlike the case before us, yet in substance are the same—mere contracts of indemnity; and no good reason is perceived for the application of a different rule as to the substance of the remedy. In the other classes of cases, under no circumstances can any thing but nominal damages be recovered, until the party has been damnified, and we see nothing in principle or authority that would justify a different rule in the case before us. When the obligee in a bond of indemnity has been damnified, he may bring suit, but not before; but however slight the damage caused by the breach of the condition, he may have judgment for the penalty, which may stand as security for the payment of future damages, with execution, in the mean time, for such as he has already sustained. The mere fact that judgment has been obtained against the intestate for the goods attached, coupled with the fact that nothing has ever been paid, and no damage actually sustained, is not, we think, a breach of the condition of the bond.

Whether independent of the agreement that no damage has been sustained, the court would presume some damage arising from the prosecution of the suit, it is not necessary to inquire. At most, it would seem to be but nominal, and would only entitle the plaintiff to a judgment for the penalty to stand as security for future payment.

To render a judgment and award execution for the whole amount of the judgment recovered against the intestate, would be open to the objections stated in *Brooks* v. *Moody*, before cited, inasmuch as the owner of the goods might still recover their value of the defendant at whose suit they were attached. *Walcott* v. *Keith*, 22 N. H. 196; and beside the administrator not only never has, but never can pay that judgment. Nor do we think that the bond in this case stands upon the footing of probate or replevin bonds, which are prescribed by statute and for specified purposes; while here the bond is merely a private contract of indemnity, and to which H. G. Conner is in no sense a party.

There must, then, unless some other disposition be made, be

*Judgment for the defendant.*